BESSIE L. KLEPPER, Appellant, *v.* SEYMOUR HOUSE CORPORATION OF OGDENSBURG, INC., et al., Respondents.

**Municipal corporations — streets — buildings — negligence— duty of municipality to maintain streets in safe condition for travel — duty of abutting owner to maintain building so snow and ice will not fall therefrom to sidewalk — when both city and owner are chargeable with notice of dangerous falls of snow and ice from building — case properly submitted under law of negligence though nuisance also alleged — owner of leased premises who undertook to keep outside of building in repair liable for injury from fall of snow and ice from roof — duty of city either to remove danger or protect passers-by — separation of verdict by jury under direction of court after they found proper general verdict disregarded — reinstatement of verdict by judge at subsequent term to which motions had been adjourned by stipulation proper.**

1. A municipality is under the duty to use reasonable care to maintain its streets in reasonably safe condition for travel and to remove all obstructions or incumbrances which are dangerous. The owner of an abutting building is also under the duty to maintain it so that snow and ice will not accumulate upon the roof and fall off upon passers-by to their injury.

2. Where in an action against a city and the owner of a building abutting on one of its streets, to recover for personal injuries to a pedestrian through her being struck by a mass of ice and snow which fell from the roof of the building, it appears that the roof had attached to it a cornice which extended out over the street and sloped at an angle so that, after heavy storms, ice and snow would slide off onto the sidewalk and that this had happened three or four times that winter and during previous winters, policemen reporting it, both city and owner are chargeable with notice of the condition. (*Hixon* v. *City of Lowell*, 13 Gray, 59, disapproved.)

3. Although the complaint alleged against the owner both nuisance and negligence there was no error in submitting the case to the jury, as to it, under the law of negligence. Nuisance and negligence at times so nearly merge into each other that it is difficult to separate them.

4. The jury were justified in finding from the evidence that the owner was in possession of the property and charged with the duty of care to prevent snow from falling from its roof. It appeared that though the premises were leased, the owner undertook to keep the outside of the premises, including the roof, in repair. An owner cannot escape his duty of exercising reasonable care to maintain his property adjoining a highway in reasonably safe condition unless he parts with the entire possession and control of the premises.

5. A holding that the city could not remove the incumbrance or the projecting roof is error. Having constructive notice of the danger to pedestrians by reason thereof the city was called upon to do something, either to remove the encroachment or danger or to protect passers-by from it. (*Cain* v. *City of Syracuse*, 95 N. Y. 83, distinguished.)

6. The jury having found a general verdict, their subsequent action, under direction of the court, of dividing it, one part against the city and another against the owner, is a surplusage which may be disregarded. Furthermore, the trial judge properly reinstated the verdict at a subsequent term to which hearing of motions had been adjourned by stipulation.

*Klepper* v. *Seymour House Corp.*, 218 App. Div. 686, reversed.

(Argued June 8, 1927; decided July 20, 1927.)

APPEAL from a judgment, entered December 30, 1926, upon an order of the Appellate Division of the Supreme Court in the third judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Delos M. Cosgrove, Loren E. Harter* and *Edmund Fitz-gerald* for appellant. The defendant Seymour House Corporation was negligent in maintaining its building and cornice over or so near the street that ice and snow in the ordinary course of things was liable to fall upon travelers lawfully upon the street. (*Hynes* v. *N. Y. C. R. R. Co.*, 231 N. Y. 229; *Walsh* v. *Mead*, 8 Hun, 387; *Kelly* v. *Washburn*, 178 App. Div. 664; *Tremblay* v. *Harmony Mills*, 171 N. Y. 598; *Shipley* v. *Fifty Associates*, 106 Mass. 194; *Smethurst* v. *Barton Square Church*, 148 Mass. 261; *Shepard* v. *Creamer*, 160 Mass. 496; *Gould* v. *McKenna*, 86 Penn. St. 297; 3 Shearman & Redfield on Negligence [6th ed.], 1886, § 721; *Glover* v. *Holbrook, Cabot & Rollins Corp.*, 189 App. Div. 328; *McNulty* v. *Ludwig & Co.,* 153 App. Div. 206.) The defendant Seymour House Corporation did not surrender entire control of its building to its tenants. It retained control over the outside of the building and over the cornice. It owed a duty to the plaintiff to keep ice and snow from falling from this cornice upon her to her injury. (*Jennings* v. *Van Schaick*, 108 N. Y. 530; *Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354.) The wing of the Seymour House building with the cornice thereon as maintained by the defendant Seymour House Corporation was a nuisance and the trial court should have submitted to the jury the question of nuisance as against this defendant. (*Davis* v. *Niagara Falls Tower Co.*, 171 N. Y. 336; *Vincett* v. *Cook*, 4 Hun, 318; *Timlin* v. *Standard Oil Co.*, 126 N. Y. 514; *Ahern* v. *Steele*, 115 N. Y. 203; *Junkerman* v. *Tilyou Realty Co.*, 213 N. Y. 404; *Barrett* v. *Lake Ontario Beach Imp. Co.*, 174 N. Y. 310; *Swords* v. *Edgar*, 59 N. Y. 28.) The defendant City of Ogdensburg was negligent in not abating the nuisance or dangerous condition of the building; in not removing or causing to be removed the snow and ice from the cornice overhanging the street; and in not giving adequate warning or notice by signs or otherwise of the danger from falling snow and ice.

(*Todd* v. *City of Troy*, 61 N. Y. 506; *Allison* v. *Village of Middletown*, 101 N. Y. 667; *Twogood* v. *Mayor, etc., of N. Y.*, 102 N. Y. 216; *Rehberg* v. *Mayor, etc., of City of New York*, 91 N. Y. 137; *Metzroth* v. *City of New York*, 241 N. Y. 470; *Farley* v. *Mayor, etc.*, 152 N. Y. 222; *Gillrie* v. *City of Lockport*, 122 N. Y. 403; *Ferguson* v. *City of Newburgh*, 174 App. Div. 554; *Embler* v. *Town of Wallkill*, 132 N. Y. 222.) The overhanging cornice with the accumulation of ice and snow thereon constituted a dangerous obstruction to the safety of State street, and was, therefore, a public nuisance and the defendant City of Ogdensburg is liable to the plaintiff for the injuries she sustained by reason thereof. (*City of New York* v. *Rice*, 198 N. Y. 124; *City of New York* v. *Knickerbocker Trust Company*, 104 App. Div. 223; *Cohen* v. *Mayor, etc., of N. Y.*, 113 N. Y. 532; *Sewell* v. *City of Cohoes*, 75 N. Y. 45; *Ivory* v. *Town of Deerpark*, 116 N. Y. 476; *Melker* v. *City of New York*, 190 N. Y. 481; *McNulty* y. *Ludwig & Co.*, 153 App. Div. 206; *McCloskey* v. *Buckley*, 223 N. Y. 187; *Hume* v. *Mayor, etc., of N. Y.*, 74 N. Y. 264; *Bieling* v. *City of Brooklyn*, 120 N. Y. 98; *Wells* v. *City of Brooklyn*, 9 App. Div. 61; 158 N. Y. 699.) The trial court properly directed entry of judgment against both defendants for the amount of damages found by the jury. (*Polsey* v. *Waldorf-Astoria, Inc.*, 216 App. Div. 86; *Wands* v. *City of Schenectady*, 171 App. Div. 94; *Post* v. *Stockwell*, 34 Hun, 373; *Gilchrist* v. *Shepard*, 214 App. Div. 810.)

*Francis E. Cullen* and *Frank J. Ryan* for Seymour House Corporation, respondent. The defendant Seymour House Corporation, having at the time of the accident parted entirely with the possession of the property from which the snow and ice fell, is not liable for negligence in failing to keep the cornice on the building free from snow and ice or in failing to hold such snow and ice on the cornice until it melted. (*Mollino* v. *Ogden & Clarkson*, 243 N. Y.

450; *Tobias* v. *Lewis*, 182 App. Div. 598; 230 N. Y. 571; *Zolezzi* v. *Kroll & Horowitz*, 243 N. Y. 490; *Clancy* v. *Byrne*, 56 N. Y. 129; 1 Thomp. on Neg. [2d ed.] 1037, §§ 1154–1171.)   After two trials no evidence has been produced indicating negligence of the defendant, Seymour House Corporation, and the Appellate Division did not err in dismissing the complaint.   (*Davis* v. *Niagara Falls Tower Co.*, 171 N. Y. 336; *Vincett* v. *Cook*, 4 Hun, 318; *Steinsitz* v. *Wannamaker*, 154 N. Y. Supp. 262; *Sterger* v. *Van Sicklen*, 132 N. Y. 499; *Odell* v. *Solomon*, 99 N. Y. 635; *Fox* v. *Ireland*, 46 App. Div. 541; *Clancy* v. *Byrne*, 56 N. Y. 129; *Wenzlick* v. *McCotter*, 87 N. Y. 122; *Stork* v. *Dorn*, 212 App. Div. 522.)

*Robert S. Waterman* for City of Ogdensburg, respondent.   It would have been trespass by the city of Ogdensburg to have gone upon the Seymour House property to remove the snow and ice therefrom.   (*Cain* v. *City of Syracuse*, 95 N. Y. 83.)   There must have been willful misconduct or culpable negligence to create any liability on the part of the city.   (*Hunt* v. *Mayor, etc.*, 109 N. Y. 134; *Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Smith* v. *Mayor*, 66 N. Y. 295; *Leary* v. *City of Yonkers*, 95 App. Div. 126; *O'Shaughnessy* v. *Village of Middleport*, 93 App. Div. 93; *Harrington* v. *City of Buffalo*, 121 N. Y. 147; *Taylor* v. *City of Yonkers*, 105 N. Y. 202; *Herman* v. *City of New York*, 148 App. Div. 61; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Cain* v. *City of Syracuse*, 95 N. Y. 83.)

CRANE, J.   On January 15, 1923, the plaintiff, a young woman twenty-nine years of age, was walking with her two children on the sidewalk of State street, a public highway, in the city of Ogdensburg.   She was in front of a building known as the Seymour House, owned by the defendant, the Seymour House Corporation.   While thus proceeding, a mass of ice and snow, weighing about 150 pounds, fell upon her from the roof of the Seymour

House, inflicting serious and permanent injuries. The judgment which she recovered at Trial Term against the owner of the Seymour House and the city of Ogdensburg has been reversed by the Appellate Division, and her complaint dismissed.

State street has been one of the principal streets and highways in the city of Ogdensburg for over fifty years. The Seymour House has been there for the same length of time, in substantially the same condition as it was on the day of the accident. The sidewalk of State street, adjoining the Seymour House at the place of the accident, for all these years had been open to the public and used by them as a public street. The city has recognized and treated it as such. For the full width of its user, the duty of the city and the adjoining property owner to passers-by was the same as if the street had been legally laid out by proper municipal proceedings. On the trial much unnecessary effort was expended in attempts to show that the Seymour building, as distinguished from the cornice, encroached upon the highway. This apparently led to much confusion, and was not at all essential to sustain the plaintiff's claim. (*Sewell* v. *City of Cohoes*, 75 N. Y. 45; *Ivory* v. *Town of Deerpark*, 116 N. Y. 476.) We may, therefore, dismiss this question upon which much evidence was given without further consideration. As to this street where the plaintiff was traveling, the city of Ogdensburg was under the duty to use reasonable care to maintain it in reasonably safe condition for travel and to remove all obstructions or incumbrances which were dangerous. The owner was also under the duty to maintain its building so that snow and ice would not accumulate upon the roof and fall off upon passers-by to their injury.

The roof of the Seymour House had attached to it a cornice which extended out over the street, as thus described, sixteen to twenty inches. It sloped at an angle of fifty degrees. After heavy storms, snow and ice would accumulate on this slanting cornice and slide off

onto the sidewalk in a mass of varying dimensions and weight. This had happened three or four times during the winter previous to the injury to the plaintiff. It had happened every winter. Members of the city government were familiar with the condition. The policeman reporting it to his superior was virtually told to mind his own affairs. The evidence in the case is abundant to prove that this cornice projecting on a slant over the sidewalk was a danger to pedestrians by reason of its facility for collecting ice and snow and slipping it off into the street. The owner of the building, whether the eaves did or did not actually project over the sidewalk, had no more right to collect snow and ice on such a structure and discharge it into the street than he would have had to shovel it down by the hand of employees. The frequency with which this thing had happened during all the winters since the defendant was the owner of the property was sufficient to charge it with notice of the condition. In *Tremblay* v. *Harmony Mills* (171 N. Y. 598) an owner was held to be liable in damages for injuries caused to a passer-by who slipped on ice formed from water discharged from a leader connected with the roof. No right to discharge water from the roof of a building, it was said, can be predicated upon the ownership of the adjacent land. A roof so constructed as to collect snow and ice and discharge it upon passers-by in a public street necessarily imperils the safety of the public, and becomes a nuisance. Any act of an individual, though performed on his own soil, if it detracts from the safety of travelers is a nuisance. (*Walsh* v. *Mead*, 8 Hun, 387; *Beck* v. *Carter*, 68 N. Y. 283.) The Supreme Judicial Court of Massachusetts has expressed this duty in very forceful language in *Shipley* v. *Fifty Associates* (106 Mass. 194). A roof was so constructed that snow and ice were likely to fall from natural causes on an adjoining highway. Speaking of the duty of the owner, the court said: " He has no right so to construct his

[246 N. Y. 85]          Opinion, per CRANE, J.          [July,

building that it will inevitably, at certain seasons of the year, and with more or less frequency, subject his neighbor to that kind of inconvenience; and no other proof of negligence on his part is needed. He must at his peril keep the ice or the snow that collects upon his own roof, within his own limits; and is responsible for all damages, if the shape of his roof is such as to throw them upon his neighbor's land, in the same manner as he would be if he threw them there himself." Again, in *Shepard* v. *Creamer* (160 Mass. 496) that court said: " It was negligence to maintain a building so near the street and so constructed that, in the ordinary course of things, snow or ice was liable to fall from the roof upon travelers on the adjoining highway."

Although the complaint alleged against the owner both nuisance and negligence, the trial court sent the case to the jury on the theory of negligence. Nuisance and negligence at times so nearly merge into each other that it is difficult to separate them. A cornice, such as that in this case, may be a nuisance by reason of its danger to passers-by on the street, and at the same time the owner may be guilty of negligence in permitting snow and ice to accumulate upon it and fall in heavy mass upon the heads of people below. The existence of a nuisance in many, if not in most instances, presupposes negligence. These torts may be, and frequently are, coexisting, and practically inseparable; as, where the same acts or omissions constituting negligence give rise to a nuisance. (*McNulty* v. *Ludwig & Co.*, 153 App. Div. 206, p. 213.) There was no error, therefore, in submitting this case to the jury under the law of negligence as to the Seymour House Corporation.

There was also evidence from which the jury were justified in finding that this corporation not only was the owner but in possession of the property and charged with the duty which I have heretofore stated.

The Seymour House Corporation acquired the property

known as the Seymour House in November of 1920, and entered into possession. At the time the cornice was in the same condition that it was on January 15, 1923, with the exception of certain repairs and modifications made by this defendant. The ground floor of part of the structure was built over into four stores by the corporation after it purchased the property, so that the building consisted of a hotel and stores. The four stores were leased and occupied by separate tenants, and were in that part of the building from which the snow fell. The hotel was leased by the corporation to one Murrah, who was originally a defendant in this action. The lease ran for five years and provided that the lessee was to keep the *interior* of the premises in repair while the lessor agreed to pay all necessary *outside* repairs. This agreement of lease, bearing date the fifth day of November, 1920, was later modified by agreement dated December 22, 1921. By this instrument the Seymour House Corporation agreed to remodel the stores facing on State street underneath the hotel rooms, " the intent being that said party of the first part shall have the right to rent the said stores and receive the income and rentals therefrom until such time as said rentals shall repay the party of the first part the cost of such improvements with interest." Under these lease agreements, it is evident that the lessee, Murrah, agreed to make the inside repairs to the hotel property, and the landlord agreed to repair the outside of the property, which of course would include the roof. The subsequent action of the parties also indicated the meaning of the lease. In August of 1922 the Seymour House Corporation considered a certain portion of the roof or cornice over State street to be dangerous. It repaired the condition. Prior to that time a battlement extended up a few feet above the roof and cornice. Mr. Wilson, the architect employed by the Seymour House Corporation to make this change, testified that this parapet wall, or battlement, as he

called it, was constructed of wood and extended above the roof about two feet. He said: "It was getting so rotten, we thought we better take it down."

This lessor, therefore, retained certain control over the premises leased. It reserved the right to remodel and rent the stores facing on State street, and undertook to and did repair the outside of the premises, or the roof. The public, however, are not particularly interested in these agreements between the lessor and lessee. An owner cannot escape his duty of exercising reasonable care to maintain his property adjoining a highway in reasonably safe condition unless he parts with the entire possession and control of the premises. (*Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354.) VANN, J., writing in that case for this court said: "If he [the owner] transfers either title or possession, in part only, he does not escape the burden.    *    *    *    As the duty is imposed by law for the public safety, its extent is measured by whatever public safety requires. Anything less than the alienation of the entire property, either permanently, as by deed, or temporarily, as by lease, would leave the public without adequate protection." This same point was raised in the *Shipley Case* (*supra*), and the court answered by saying: "The building was occupied by separate tenants, one of whom had some special facilities for getting upon the roof, but it does not appear that the place where the snow and ice accumulated was under the control of the tenants, or that they had anything to do with the outside of the roof.    *    *    *    The land- lords were not excluded from going upon the roof, and so altering its construction that at all seasons of the year it should not produce any inconvenience or danger to travelers on the highway below."

On the first trial of this case the tenant, as I have stated above, was a party. He and the Seymour House Corporation appeared by the same able counsel. The complaint was dismissed as to the lessee, as it did not

appear that *he* had anything to do with the outside of the building. (See record in 212 App. Div. 277.) Strange indeed would it be in the administration of law by our courts if the case against the lessor should now be dismissed because *it* had nothing to do with the outside of the building. All obligations toward the public would have vanished. The leases were before the court on both trials.

Although not instructed so to do, the jury, with a surprising and unusual degree of intelligence, answered specific questions framed by themselves. One of them as reported in their verdict was as follows: " *Third.* Was the Seymour House Company guilty of negligence? The jury finds upon consideration of the evidence given that the Seymour House Company was guilty of negligence by allowing snow and ice to accumulate on the cornice of the wing of Seymour House and not taking precaution to remove said snow or ice or to erect a barrier to hold said snow or ice on the cornice roof till it melted or was otherwise disposed of."

There was evidence to sustain this finding of the jury.

We now approach the case against the city. The court charged the jury that the cornice was a part of the hotel, and the jury found specifically that the hotel or the wing on State street projected over the street. The jury could hardly have found otherwise, as the defendant's own witnesses testified that the cornice projected out sixteen to twenty inches over the traveled portion of the sidewalk. As I have above said, the slide from the slanting ledge of snow and ice into the street had happened so many times that the city must have known of the dangerous situation. Its public officials had notice of it. The policeman reported it. The duty rested upon the city to keep this sidewalk reasonably safe for pedestrians. It was an active duty, requiring vigilance and diligence. Even if no portion of the building projected over the highway, yet substances falling from the building into

the highway, making it unsafe and dangerous, would require some safeguard or protection from the danger. (*Metzroth* v. *City of New York*, 241 N. Y. 470.)

*Todd* v. *City of Troy* (61 N. Y. 506) is in point. In that case, while the plaintiff was walking along the sidewalk of the city of Troy, she slipped and fell on ice caused by the freezing of water which came down a conductor from a building and flowed out and over the sidewalk. The conductor had been there for a long time and the water would freeze and thaw and freeze again on the sidewalk, according to the weather. EARL, J., writing for this court, said: " Upon this evidence it was a question for the jury to decide, whether it was negligence for the municipal authorities to permit this water to flow upon the sidewalk, and thaw and freeze there and form ice remaining there for some days. It was also a question for the jury to decide, whether the existence of this state of things, for the length of time and under the circumstances, in a street much traveled, which was easy to observe, and must have been seen by many persons, ought to have been known by the defendant; in other words, to decide whether the defendant was guilty of negligence in not knowing facts so notorious." (See, also, *Allison* v. *Village of Middletown*, 101 N. Y. 667; *Gillrie* v. *City of Lockport*, 122 N. Y. 403.)

The case of *Hixon* v. *City of Lowell* (13 Gray, 59), cited and relied upon by the court below, is not the law of this State. Our courts refused to follow it in *Leary* v. *City of Yonkers* (95 App. Div. 126); *Champlin* v. *Village of Penn Yan* (34 Hun, 33; affd., 102 N. Y. 680). The *Hixon* case rested upon the law of incumbrances and encroachments peculiar to the New England States. The subject is fully discussed in Dillon on Municipal Corporations (Vol. IV [5th ed.], sections 1694, 1705, 1706).

Some of the rulings of the judge upon this trial were due to the opinion of the Appellate Division upon the appeal from the first trial, and found at 212 Appellate

Division, 277. Nuisance, it was said, could not be charged to the Seymour House Corporation, as it never had actual notice of the dangerous roof. The case of *Ahern* v. *Steele* (115 N. Y. 203), cited as an authority for this proposition, is to the contrary. This court there stated: " The owner is responsible if he creates a nuisance and maintains it; if he creates a nuisance and then demises the land with the nuisance thereon, although he is out of occupation; if the nuisance was erected on the land by a prior owner, or by a stranger, and he knowingly maintains it; if he has demised premises and covenanted to keep them in repair, and omits to repair, and thus they become a nuisance." The court distinctly held that the demising of the pier there in question while it was in such a condition as to be a nuisance rendered the trustee who made the lease guilty of misfeasance and responsible for the damages caused by the nuisance. The actual notice which is required is in the instance where one inherits property on which is a nuisance without knowledge of its existence. In such a case there would be a mere passive passing of title, no act of entry or possession. Where, however, the heir enters into possession and makes a lease of property upon which there is a nuisance, his possession in the eyes of the law amounts to notice, provided of course that the nuisance is one which he should have known about. The Seymour House Corporation, after entering into possession of the property, leased it with a slanting roof or a nuisance upon it. No actual notice of this condition was necessary. It was supposed to know what it was leasing. The company, moreover, as we have above stated, remained in control of the roof. (See, also, *Clancy* v. *Byrne*, 56 N. Y. 129.)

Again, the Appellate Division was in error in holding that the city could not remove the incumbrance or the projecting roof. *Cain* v. *City of Syracuse* (95 N. Y. 83), cited by it, has no reference to public streets, as the wall which fell did not face the street, but fell on adjoining

property.   This court distinguished such a case from those where the general public were interested, and citizens menaced.   The nuisance then became not a private, but a public nuisance, which the city could remove.   " While here," said the court, " the walls threatened only adjoining private property and endangered the lives not of the public, but of the adjoining owners or occupants."

The city of Ogdensburg, having constructive notice of this over-reaching roof and of the danger to pedestrians by reason thereof, was called upon to do something, either to remove the encroachment or danger or to protect passers-by from it.

The jury specifically found: " The jury finds upon consideration of the evidence given that the city of Ogdensburg, as defendant in this action, is guilty of negligence by not causing proper precaution to be taken to prevent the fall of ice and snow, or both, into a public highway and thereby endangering the persons or people passing to and fro upon a public highway of said city, and by allowing the above condition to exist, thereby constituting a public nuisance in that portion of State street adjoining the wing of said Seymour House."   It was justified in so finding.

The jury also returned together with these findings a general verdict in favor of the plaintiff in the sum of $37,500 against both defendants, which leads to a consideration of the next point.

At the request of counsel for the Seymour House Corporation the judge thereafter directed the jury to separate their verdict, which they did, by dividing it $20,000 against the city and $17,500 against the corporation.   We think that the jury having found a general verdict in accordance with the law, their subsequent action under the direction of the court is a surplusage which may be disregarded.   With the rendition of their verdict in accordance with the law their duty ceased.   Their subsequent expression as to how their verdict should be divided was beyond their powers, and, therefore, a nullity.

But even if this is not so, we think the judge properly reinstated their verdict at a subsequent term of the court. We recently held that an amendment of a verdict is in effect an incident of the trial, and the power to make it is exhausted when the term is at an end. ( *Urband* v. *Lubell*, 245 N. Y. 156.) Such procedure, however, submits to stipulation. The parties in this case stipulated that the motion to set aside the verdict and for a new trial, and to amend the verdict, by directing entry of a judgment for the full amount against both defendants, be heard at a subsequent term of the court presided over by the same trial judge. The defendants, however, reserved the right to object to the power and jurisdiction of the Special Term to grant the motion of the plaintiff to amend the verdict. The reservation was of power to *grant*, not of power to *hear*. The court had no power to hear any of the motions at a subsequent term unless the parties so stipulated. They did so stipulate. What they evidently had in mind was, that while the court might hear the motion it had not power after a verdict of a jury to amend the verdict at any term. The court at the original Trial Term had the power to reinstate the verdict of the jury, and this power continued by stipulation for the term to which the parties had adjourned a hearing of the motions. We find no difficulty, therefore, with this procedure.

It only remains for me to state that the Appellate Division reversed the judgment for the plaintiff upon the law alone and thus affirmed the facts. We find no error of law in this case which justified reversal, as we have stated. The judgment of the Appellate Division should, therefore, be reversed and that of the Trial Term affirmed, with costs in the Appellate Division and in this court.

CARDOZO, Ch. J., POUND, LEHMAN and O'BRIEN, JJ., concur with CRANE, J.; ANDREWS, J., concurs in result; KELLOGG, J., not sitting.

Judgment accordingly.