ANNA LIPSTEIN, Plaintiff, *v.* CITY OF SCHENECTADY, Defendant.

County Court, Schenectady County, May 5, 1941.

*Arlen T. St. Louis, Corporation Counsel,* for defendant.

*Alexander Grasso* for plaintiff.

LIDDLE, J.  Plaintiff alleges in her complaint negligence, including the negligent construction and maintenance of Veeder Avenue, a public street in the city of Schenectady, and further alleges that the defendant municipal corporation failed to abate a nuisance and demands damages in the sum of three thousand dollars.  Defendant in its answer pleads a general denial and further, as an affirmative defense, alleges it was not the owner of the real property and had no control directly or indirectly over the real property from whence came an erosive soil and earth and debris which damaged plaintiff's property adjacent to defendant's street and, therefore, maintains that any damage sustained to plaintiff's property was consequential and that the resulting damage gave no right of action to the plaintiff and that the rule *damnum absque injuria* applies.

From the testimony of the plaintiff and the plaintiff's witnesses it appears that plaintiff on the 20th day of June, 1934, was the owner of a house and premises with buildings thereon commonly known as 581 Broadway in the city of Schenectady, N. Y., where she conducted a poultry business.  This lot had a frontage of 75 feet along Broadway on the west and 75 feet in the rear on the east along Veeder Avenue.  The lot was approximately 100 feet in depth.  On the southeast corner of the lot near Veeder Avenue was erected a building approximately 12 feet high, 20 feet wide and 40 feet long where plaintiff in her business kept poultry, and on the date in question it was testified there were approximately 600 head of poultry in this building.

By reason of the unusual facts and the damage sustained to plaintiff's property, the elevation of portions of the surface of this lot above sea level appears pertinent.  On Broadway in front of said premises the elevation is 207.7 feet above sea level.  At a point approximately 80 feet easterly from Broadway at the southeast corner of the lot in question where the poultry house was located the elevation is 253 feet.  The elevation of Veeder Avenue above sea level is 259.3 feet.  The building in question is therefore approximately 6 feet lower than the pavement on Veeder Avenue.

Veeder Avenue is a public street constructed and maintained by the defendant municipality along this hillside. This is a paved street 22 feet in width with a sidewalk on the westerly side approximately 5 feet in width with a six-inch curb. On the east side of this street there is no sidewalk and no curb, with a gutter construction for the purpose of carrying water down the grade. This pavement on Veeder Avenue is built flush with the hillside. From the testimony it appears that to level this street through and along the side of this hill it is shored or elevated by standard metal-curb crisscross.

From the easterly edge of Veeder Avenue and easterly up this hill for a distance of approximately 150 feet to the brow of the hill there is a continuous rising elevation to a point 355.8 feet above sea level. In other words, in approximately 150 feet there is a rising elevation of approximately 96.5 feet. The hillside was covered with trees and shrubs and debris and was sand loam. This hillside easterly of Veeder Avenue is owned by private individual owners, as testified to and as plotted on a map marked Defendant's Exhibit 2. These lots along this hillside front on a street on the top of the hill known as Summit Avenue.

On and before the 20th day of June, 1934, there had been a heavy precipitation of rain. On the 20th day of June, 1934, a portion of the earth from this hillside loosened, carrying with it water, shrubs and debris, and slid down the hill across Veeder Avenue and upon plaintiff's chicken coop, killing approximately 600 hens and chickens and demolishing the building, for which the plaintiff claims damage against defendant municipality. From the credible testimony it appears that plaintiff suffered damages in the amount of $1,188.

According to the testimony of Simon Etkin, who is now City Clerk of the defendant City of Schenectady and who was formerly Alderman of the ward in which said property is located and who was subpœnaed as a witness on behalf of plaintiff, defendant municipality had on previous occasions received notice of a condition by reason of other earth slides from this hillside affecting other properties in the general location where plaintiff's property is located. This same witness further testified from the records of proceedings of various Common Councils that defendant municipality had notice of this condition.

Plaintiff's complaint charges defendant municipality with the negligent construction and maintenance of Veeder Avenue as the contributing factor for the damages sustained by the plaintiff. However, from a careful examination of the credible

testimony there appears to be insufficient evidence charging defendant with either negligent construction or negligent maintenance of Veeder Avenue itself.

Therefore, the only question, it appears, is whether by the construction and maintenance of this street by defendant municipality it omitted to exercise due care in preventing the hillside or a portion thereof on property not owned or controlled by defendant municipality, but owned by private owners, from loosening and running across defendant's street and inundating and destroying plaintiff's property contiguous to said street on the westerly side thereof. In other words, do the facts here fall within the principle in which a municipal corporation is shown as creating a nuisance by authorization of an act committed, which is unlawful regardless of the manner of its performance, or an act which, though otherwise lawful, has a natural tendency to create such danger of injury to plaintiff's property that it might properly be found a nuisance?

It was the duty of the defendant municipality to exercise due and reasonable care to maintain said street in a reasonably safe condition for the public use and remove all obstructions or encumbrances which were dangerous. (*Klepper* v. *Seymour House Corp.*, 246 N. Y. 85.)

Counsel for the plaintiff in his brief has cited at length many cases establishing the duty which a municipality must exercise in the construction and maintenance of its streets to travelers thereon. However, many of these cases are definitely distinguishable from the facts at bar. There is no doubt in the mind of this court but that the defendant municipality had notice of the condition of this hillside relative to the use of the street by the public. Such notice did not, however, establish a legal liability as against defendant municipality in favor of plaintiff. Counsel for plaintiff relies largely on the rule laid down by the court in *Klepper* v. *Seymour House Corp.* (*supra*) to sustain a verdict for the plaintiff here. That case, it appears, is clearly distinguishable from the facts here established. The plaintiff in the *Seymour* case was a pedestrian on the street and was injured from the falling of an accumulation of ice and snow from the roof of the Seymour Hotel immediately adjoining the street where plaintiff was injured.

It seems that the rule of law as established in *Radcliff* v. *Mayor &c. of Brooklyn* (4 N. Y. 195, 203) is applicable in the case at bar wherein the court held as follows: " That persons acting under an authority conferred by the legislature to grade,

level and improve streets and highways, if they exercise proper care and skill, are not answerable for consequential damages which may be sustained by those who own lands bounded by the street or highway." The substance of the complaint charges the defendant with failing to protect plaintiff's lot from this earth flowing from the hillside across the street and upon defendant's lot adjoining Veeder Avenue. Judge EARL, writing for the court in *Lynch* v. *Mayor* (76 N. Y. 60, at p. 62), held: "That the defendant did not owe the plaintiff such protection is too well settled in this state to be questioned or to require further discussion." And further, in *Prime* v. *City of Yonkers* (192 N. Y. 105, 111), Judge CULLEN in writing his opinion for the court held as follows: "' But the rule is different where one acts under the authority of law. There he has the sanction of the state for what he does, and, unless he commits a fault in the manner of doing it, he is completely justified.' "

And more recently Mr. Justice CRAPSER, writing for the court, Third Department, in *Klein* v. *Town of Pittstown* (241 App. Div. 202), where the facts were somewhat similar to the case at bar, said: "Before a municipality can be made liable for causing an injury it must appear that some duty, incumbent upon it to perform, has been neglected, or has been improperly discharged. * * * The injury which plaintiff suffered by the water and material coming onto his land, gave him no right of action. It was *damnum absque injuria*."

I am of the opinion and therefore impelled to come to the conclusion that the plaintiff has failed to establish facts sufficient to constitute a cause of action; that the defendant municipality is not guilty of creating a nuisance on property over which it had no control, right of entry or ownership as affecting property owned by plaintiff contiguous to defendant municipality's street; that the damage sustained by plaintiff came within the well-established rule of *damnum obsque injuria*. The defendant's motion is granted dismissing the plaintiff's complaint, together with a verdict of no cause of action.

Judgment is directed to be entered accordingly, with costs.