## Reed, etc., v. Ulrich, etc., et al.

*John A. Blackmore*, for plaintiff.
*Gifford, Graham, MacDonald & Illig*, for defendants.

MOOK, P. J., December 29, 1950.—On February 13, 1947, plaintiff, Pluma Reed, was walking on the sidewalk on the west side of Peach Street, a public highway in the City of Erie, in a southerly direction. She paused for a moment on the southwest corner of Peach Street and Seventeenth Street to wait for an acquaintance by the name of George Bartholomew, who called to her. When he caught up to her they proceeded along together on the sidewalk in front of a building owned and occupied by defendant, Fred J. Ulrich, who maintained and operated a leather goods store on the first floor of the building, the premises being known as No. 1702 Peach Street. While Mrs. Reed and her companion were walking along this sidewalk at some point in front of the building a large icicle suddenly fell from the ledge along the roof and struck her on the head with such force that she was knocked down upon the sidewalk and remained unconscious for some time.

Mrs. Reed, thereafter, brought suit against defendant, Fred J. Ulrich, to recover damages for her in-

juries. Mr. Ulrich brought upon the record George J. DeFoy, the operator of a restaurant in the adjoining building, and C. Arthur Blass, administrator c. t. a. of the estate of J. Reed Craig, deceased, and Catherine Craig, owners of the adjoining building as additional defendants by reason of his claim that the icicle which struck Mrs. Reed was hanging from the roof of their building rather than from his. The case was tried before the court and a jury and a verdict was rendered in favor of plaintiff and against original defendant only in the sum of $725.

Original defendant has filed a motion for judgment n. o. v. and in support of his motion he contends that the evidence of negligence is insufficient to support the verdict.

Plaintiff neither alleged in her complaint nor offered any evidence to show that defendant committed any negligent act or that he constructed or maintained his building in such a way as to create a dangerous condition. The negligence complained of is that the "ice was allowed by said defendant to remain on the front of said building in such condition that it was likely to, and did, give way in the manner as aforesaid; that the defendant failed to remove said ice from said building, knowing it to be a hazard to persons lawfully using said sidewalk; that the defendant failed to remove said ice from the front of said building so as to provide for the safety of those persons who used said sidewalk adjacent to said premises; that the defendant maintained the front of said premises in such condition that the same constituted a danger and menace to persons lawfully going over and along the public sidewalk at the said place, and unlawfully interfered with the free, proper and safe use of the sidewalk by the public."

Defendant, on the other hand, contends that there was no evidence that he had any notice of the dangerous

condition or the existence of the danger for such a time as would amount to constructive notice. It is, of course, well settled now that on a motion of this kind it is necessary to view the evidence in the light most favorable to plaintiff and to give her the benefit of every inference that may reasonably be deduced therefrom. Therefore, we must consider the testimony of Francis O. Wilson, the taxidriver, who is a son-in-law of plaintiff, who testified that he saw a large icicle hanging from the Ulrich building "three days" before it fell. He testified that it had been gradually getting larger and that it was an exceedingly large icicle. He also testified that the icicle was at least four to five feet in length and three to three and one-half feet in width across the top and that it came down to a point. He mentioned that he had noticed an article in the newspaper about the danger that existed in the city from large icicles hanging down from the buildings and since he had read the article he had particularly noticed this icicle. This same witness arrived at the scene of the accident shortly after Mrs. Reed had been struck and said that the ice that fell on the sidewalk would amount to about five bushels and some of the pieces were from a foot to a foot and one-half long and about one foot to sixteen inches across. Another witness, George McCallion, said the icicle was from five to six feet long and two and one-half to three feet in width. George Bartholomew, the gentleman who was walking with Mrs. Reed, testified that following the accident "there was ice all over the walk—a lot of it—there were chunks a foot long lying all over the pavement in every direction". Of course, there was the undisputed fact that Mrs. Reed was struck with sufficient force and violence to knock her down on the walk and seriously injure her.

There was other evidence in the case from which inferences favorable to plaintiff may be deduced. Mrs.

Clara Oakes, a witness called by defendant, testified that she lived directly across the street from defendant's store. She said she actually saw plaintiff being struck by the ice, although she said the icicle was hanging on the adjoining building over DeFoy's Restaurant. She said, however, that she had noticed this icicle the day before and wondered why it had not fallen. Defendant DeFoy testified that he had noticed the icicles over his building and the Ulrich building on the day before Mrs. Reed was injured and that he had gone upon the roof of the building and knocked the icicles down over his restaurant. A photograph of the building was offered in evidence which revealed that it was a small two-story structure with a gable roof sloping towards the front and that on the second floor there are large windows on the front and anyone could have reached out and knocked the icicles down that were hanging from the roof.

Defendants offered evidence of the weather conditions in the city of Erie for 12 days prior to the accident, from February 1st up until February 13th. Without reviewing in detail all this evidence, it was shown that for several days prior to the accident there had been a considerable amount of snow and for at least two or three days before the accident there had been alternate freezing and thawing weather, which, as explained by the witness, caused the formation of icicles. It was also explained that heat from inside the building would cause a certain amount of thawing of the snow on the roof and would cause the formation of icicles.

There was further evidence on the part of defendants that while defendant Fred J. Ulrich himself was an aged gentleman who may not have actually participated in the management of the business, his daughter and nephew who operated the store for him were in and out of the building probably several times a day prior to the accident and must have observed the icicles which

were in front of this building. As a matter of fact, the clerk, Ray Ulrich, a nephew of defendant, who had been working at that store for 20 years or more, said he had observed the building but did not see any ice except on the drainpipe, however, that ice was still there after Mrs. Reed was injured, so obviously there must have been other ice on the building besides that which Mr. Ulrich said he saw.

In spite of this considerable accumulation of evidence that a dangerous condition existed in front of this building for possibly two or three days, defendant argues that we must be prepared to announce a new ground for negligence in Pennsylvania or practically overrule the recent decision of Hutchinson v. Montgomery Ward and Company et al., 364 Pa. 126, 70 A. (2d) 838, in order to sustain this verdict. With this contention we cannot agree. We concede at once that the doctrine of res ipsa loquitur does not apply to this kind of a case. The rule is, however, as is most clearly stated by the late Chief Justice Maxey in the case of Pope v. Reading Company, 304 Pa. 326, 331:

"While the doctrine of *res ipsa loquitur* does not, as we said above, apply to cases in which a plaintiff is injured by a falling body, the negligent acts of omission by a defendant in such cases may be shown by establishing facts and circumstances from which his negligence may be legitimately inferred. It is not a case of presuming negligence from the mere happening of an accident, but it is a case of inferring negligence from the circumstances from which the accident apparently arises."

On page 333 of the same opinion Justice Maxey continued as follows:

"Negligence has been often and authoritatively defined as 'want of care under the circumstances.' The word 'circumstances' is comprehensive. It embraces the entire sum of the attendant facts, including the

operation of the forces of nature so far as they bear upon or relate to the happening of the central event. A person is charged with ordinary knowledge of the workings of these forces, and his conduct, if it is to escape being stigmatized as wanting in care, must conform to the normal workings of the forces of nature. At common law it was held that every man must have some knowledge 'of the quality of his beast' (1 Hale P. C. 430) and use appropriate means to keep that beast from harming people. Public welfare requires that this same salutary rule apply to the inanimate objects in a man's possession and subject to his intelligent control. For example, when a person places a milk bottle or other object on the window ledge of a building, he does so in the knowledge that the wind or some vibration may dislodge that bottle and gravity will cause it to fall. When he leaves his automobile on a grade, with the brakes not effectively set and without turning the front wheels to the curb, he is chargeable with knowledge of the fact that gravity is likely to cause that vehicle to move down grade and injure persons in its path."

The same reasoning set forth above certainly applies to this case. In our opinion when a mass of ice accumulates in front of a building immediately adjacent to a public sidewalk which is five or six feet long and three or four feet in width the owner of the building is certainly chargeable with notice that the ice might fall and seriously injure persons who he knows will be walking along the street directly underneath it. Such an accumulation of ice can hardly be considered a normal condition or one which happens right along without danger to anyone as is the case with the snow which accumulates on the rooftops of any building whenever there is a snowfall. We think the facts in the case of Hutchinson v. Montgomery Ward and Co., supra, are entirely different and easily distinguishable

from the present case. There, according to the major-
ity opinion, there was no unusual or extraordinary
condition prevailing at the time of the accident which
would cause the "occupier", as an ordinary, careful and
prudent person, to know that snow and ice would come
out of the gutter and into the street and the amount
that actually fell perhaps amounted to a bushel in
quantity, containing chunks of snow and ice three or
four inches wide and four to five inches long. Further-
more, the snow in that case fell from the rooftop and
there was nothing about the roof or the building to
cause anyone to expect that it would come down in a
mass resulting in injury to any person. We think that
it is quite a different matter for a large quantity of ice
to be hanging down from the roof five or six feet, as
was shown by the evidence in the present case. There is
also another factor in the Hutchison case which is dif-
ferent than in the present case and considerable em-
phasis is placed upon it, particularly by former Chief
Justice Maxey in his concurring opinion. In consider-
ing whether there was negligence upon the part of the
owner or occupier of the real estate it is proper to con-
sider what a person can do under the circumstances to
alleviate the possible danger. Now, as was pointed out
by Justice Maxey, the average householder has neither
the ability or agility to climb up on his roof and clean
off the snow. Such is not the case, however, with the
icicle in the present situation. As we have previously
pointed out, it would have been a simple matter to reach
out of the second story of this building with a snow
shovel or an ice chopper and knock the icicles down
which were hanging from the roof. Since they were
hanging directly over the entrance to Mr. Ulrich's
building it would seem like ordinary prudence to have
done so and in support of this theory there is, of course,
the evidence which we have previously mentioned that
Mr. DeFoy did that very thing.

We therefore, conclude that it is quite unnecessary to enunciate any new principle of law to reach the conclusion that there was abundant evidence of negligence in this case to submit to a jury. We instructed the jury in words taken from the majority of the opinion in the Hutchison case, supra, to wit:

"To charge the owner or occupier with culpability in such a case it must not only appear that the condition existed for so long a time as to visit him with knowledge of it, but must also appear that the danger was sufficiently obvious that he should have realized that someone might be injured because of it: . . . Clearly the mere fact that snow or ice fell from the roof is not of itself sufficient proof of negligence. It was incumbent on (plaintiff) to show some unusual condition existing before the accident that would lead (defendant), through (his) employees, in the exercise of reasonable and ordinary care, to believe that additional precautions were required."

Under these instructions, the jury having resolved the issues in favor of plaintiff, we see no reason to disturb their verdict.

While we do not think it is necessary to add anything further to this opinion, we do wish to mention briefly that the decision reached by us in this case has support in other jurisdictions. See Klepper v. Seymour House Corporation et al., 246 N. Y. 85, 158 N. E. 29, 62 A. L. R. 955 and the annotation which follows that case (62 A. L. R. 964).

Accordingly, we enter the following

### Order

And now, December 29, 1950, the motion for judgment non obstante veredicto is discharged. An exception is sealed for defendant Fred J. Ulrich.