## Holbert *v.* Philadelphia, Appellant.

*Negligence—Municipalities—Sidewalk—Accumulations of ice and snow —Contributory negligence—Evidence—Case for jury.*

A municipality is not liable for injuries resulting from the general slipperiness of its streets or its sidewalks occasioned by a recent precipitation and freezing of rain or snow. Persons who undertake to pass over the sidewalks of a street made unsafe or dangerous by the freezing of recent falls of rain or snow know their condition and assume the risk, and if they fall by reason of the smoothness of the ice, the law imposes no liability upon the city.

While a municipality is not responsible for the general slippery condition of its sidewalks caused by the recent falling or freezing of rain or snow, yet the rule does not extend so far as to protect the city from lia-

bility for injuries caused to a person by slipping on ice in a street or sidewalk where it has accumulated by reason of a defect in a street or walk or by reason of the neglect to construct and maintain suitable drains to carry off the water.

It is the duty of a municipality to keep its streets, including its sidewalks, in a reasonably safe condition so that pedestrians using the sidewalks and exercising care may do so with safety. A sidewalk may be made defective or dangerous by the accumulation of ice or snow as well as in other ways and by other means. The municipality, however, is not responsible unless the defective condition of the walk is attributable to its negligence.

The liability for injuries resulting from the accumulation of ice on a pavement is not confined to cases where the accumulation has resulted in hills or ridges.

The accumulation of ridges and hills in ice may cause a pavement to be dangerous and convict the city of negligence, but the city is equally responsible if the sidewalk is made dangerous to public travel by reason of any accumulation of ice and snow caused by the negligence of the city. In other words, if an injury results to a pedestrian by reason of a defective sidewalk, the municipality is liable if the defect, whatever it may be, was occasioned by the municipality's negligence.

When the testimony shows a defect of such character that the street can be used with safety by the exercise of reasonable care notwithstanding its defective condition, it is not for the court, but for the jury, to determine whether the injured party performed the duty required of him under the circumstances.

It is not the law that a resident in a city must remain continuously on his property, when the city grossly neglects the repair of its streets, under pain that if he ventures on the streets or walks and suffers injury resulting from the city's default, he can recover nothing. Nor is the resident bound under like pain to abstain from going to church in the evening, or other places when he may be moved to go by a sense of duty or love of pleasure. On his part it is enough if he takes the ordinary care which ought to be exercised by a prudent man, under the circumstances.

In an action by a woman against a city to recover damages for personal injuries which occurred by falling on a slippery sidewalk, it appeared that the place of the accident was in a tunnel by which a frequented street was carried under a railroad. Water was carried down the slope of the street into the tunnel, and water also dropped from the railroad above. The sun did not penetrate the tunnel, and during the winter the city permitted the ice to accumulate on the sidewalk to the extent of from one to two inches in thickness, except in a few small places, and to remain in that condition continuously for long periods. Plaintiff knew of the condition of the walk, and passed over it before, but had not fallen. Other persons had fallen on the ice there, but many

others had passed over it with safety. *Held,* that the question of the city's negligence and the plaintiff's contributory negligence was for the jury, and a verdict and judgment for plaintiff should be sustained.

Argued March 26, 1908. Appeal, No. 12, Jan. T., 1908, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1904, No. 1,103, on verdict for plaintiff in case of Agnes Y. Holbert v. City of Philadelphia. Before Mitchell, C. J., Brown, Mestrezat, Potter and Elkin, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Barratt, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,406. Defendant appealed.

*Error assigned* was refusal to give binding instructions for defendant.

*Joseph W. Catharine,* with him *Charles W. Boger,* assistant city solicitors and *J. Howard Gendell,* city solicitor, for appellant.—A coating of ice from one inch to one and one-half inches thick caused exclusively by the action of the elements, on a pavement structurally sound, does not constitute an actionable defect in the highway, where the only irregularity in its surface is that caused by the footsteps of persons walking across it, however long it may have existed: Mauch Chunk v. Kline, 100 Pa. 119.

A mere accumulation of snow and ice that does not form an obstruction to walkers, provided the sidewalk is in other respects properly constructed, and in good repair, will not render a municipality liable in damages: Dehnhardt v. Phila., 15 W. N. C. 214; Mauch Chunk v. Kline, 100 Pa. 119; Garland v. Wilkes-Barre, 212 Pa. 151; Blaine v. Phila., 33 Pa. Superior Ct. 177; Macomb v. Smithers, 6 Ill. App. 470; Aurora v. Parks, 21 Ill. App. 459; Ahern v. Melvin, 21 Pa. Superior Ct. 462; Rotsell v. Warren Boro., 10 Pa. Superior Ct. 283.

Evidence of the conditions prevailing on the day of the accident and at other times some days or weeks prior thereto, is not sufficient to charge the city with notice of the existence of an accumulation of ice, in the absence of proof that the ac-

cumulation had continuously existed during the interim, or
that the temperature prevailing during said period was such as
to warrant the inference that said condition had continuously
existed : Garland v. Wilkes-Barre, 212 Pa. 151 ; Burns v. Brad-
ford, 137 Pa. 361; Hanson v. Warren Boro., 22 W. N. C. 133.

Plaintiff was guilty of contributory negligence : Sickels **v.**
Philadelphia, 209 Pa. 113 ; Dougherty v. Philadelphia, 210 Pa.
591 ; Robb v. Connellsville, 137 Pa. 42 ; Fleming v. Lock Haven,
15 W. N. C. 216 ; Dehnhardt v. City of Philadelphia, 15 W.
N. C. 214; Erie v. Magill, 101 Pa. 616 ; Dwyer v. Port Alle-
gheny, 216 Pa. 22 ; Evans v. Philadelphia, 205 Pa. 193 ; Steck
v. Allegheny, 213 Pa. 573.

*Lewis Lawrence Smith,* for appellee.—The case was for the
jury : Moore v. Phila., 33 Pa. Superior Ct. 194 ; Steck v. Alle-
gheny, 213 Pa. 573 ; Bucher v. Sunbury Borough, 216 Pa. 89 ;
Campbell v. York, 172 Pa. 205 ; McLaughlin v. Corry, 77 Pa.
109 ; Fritsch v. Allegheny, 91 Pa. 226 ; Kibele v. Philadelphia,
105 Pa. 41 ; Wyman v. Phila., 175 Pa. 117 ; Koch v. Williams-
port, 195 Pa. 488 ; McCabe v. Phila., 217 Pa. 140.

Plaintiff was not guilty of contributory negligence : Mellor
v. Bridgeport, 191 Pa. 562; Brown v. White, 206 Pa. 106 ;
Steck v. Allegheny, 213 Pa. 573 ; Evans v. Philadelphia, 205
Pa. 193; Manrose v. Oil City, 178 Pa. 276 ; Bucher v. Sun-
bury Borough, 216 Pa. 89 ; Chilton v. Carbondale, 160 Pa. 463 ;
Hill v. Tionesta Twp., 146 Pa. 11 ; Sickels v. Philadelphia,
209 Pa. 113 ; Erie v. Magill, 101 Pa. 616.

OPINION BY MR. JUSTICE MESTREZAT, May 11, 1908 :

About two o'clock on Sunday afternoon, January 25, 1903,
Agnes Y. Holbert, the plaintiff, and her sister, Mrs. Stevens,
left the former's home on East Walnut lane, Germantown,
within the limits of the city of Philadelphia, to go to Indiana
avenue.   Their direct route was south along Magnolia avenue
to Chelton avenue where they were to board a street car to reach
their destination.   Magnolia avenue is fifty feet wide, and its
general course is north and south.   Both the cartway and the
sidewalks are paved with brick.   The Germantown branch of
the Philadelphia and Reading Railroad crosses it at a right
angle.   Only the eastern footway or sidewalk is continued

under the bridge and forms with the bridge and its abutments a tunnel about thirty feet long, ten feet wide and seven feet high on the north end and ten feet high on the south end. From a point some distance north of the tunnel or bridge, Magnolia avenue descends rapidly to the south side of the bridge, the grade in the tunnel being three feet in a distance of thirty feet. The sidewalk under the bridge is paved with brick, but without curb. While there were intakes in the avenue on the north side of the bridge through which water from the street could pass, yet the water which fell on the east sidewalk and water dropping from the bridge naturally ran through the tunnel to the south side of the bridge. The bridge prevented the sun from falling upon the sidewalk beneath it.

When the plaintiff arrived at the north side of the bridge she discovered some ice at the mouth of, and also in, the tunnel. She proceeded along the sidewalk and when she was about halfway through the tunnel, she slipped on the ice, fell and broke her left arm in two places. Her description of the attempt to pass under the bridge and of the accident is as follows : " I went on and I came, by picking my way carefully, and I stopped and looked where I was going, and I saw a bare spot at my right. I thought, here is a place of safety, I will get on that place; so I could see my way on through the place in safety at that place. Just as I was stepping from the ice that I was standing on, on to this place of safety, my feet went out from under me and I fell, and I broke my left arm in two places—at the wrist and at the elbow." The plaintiff claimed, and her testimony tended to show, that the walk under the bridge except a few small places was covered with ice from one to two inches thick, and that part of the ice was very rough. The bridge was built in 1895, and there was ample evidence in the case to warrant the jury in finding that during the winter seasons since its construction ice invariably accumulated on the sidewalk beneath it. It was in evidence that the winter of 1902–3 was "a very hard winter—a hard, miserable winter . . . . it [sidewalk] was icy all that month [January, 1903]."

This action was brought by the plaintiff to recover damages for the injuries she sustained in falling on the sidewalk under

the bridge.   It is averred in the statement of claim " That by reason of the overhead bridge of the railroad across the said Magnolia avenue ice and snow accumulate under said bridge unless the pavement is kept clean ; that it was the duty of said defendant to keep said sidewalk clean and free from ice. . . . But notwithstanding its duty in the premises the said defendant did not keep the said sidewalk in good order and repair and free from such obstructions but allowed the said ice and snow to accumulate there and remain there for a long space of time, and by reason of its said neglect the plaintiff was injured."   The defendant offered no evidence, and the case was submitted to the jury upon the plaintiff's testimony. The verdict was for the plaintiff, and from the judgment entered thereon this appeal was taken by the city.

A municipality is not liable for injuries resulting from the general slipperiness of its streets or its sidewalks occasioned by a recent precipitation and freezing of rain or snow.   During the night rain or snow may fall and freeze so that streets and sidewalks are slippery and in a dangerous condition, but it manifestly would be unreasonable to hold the city liable for injury to a pedestrian the following morning caused by his falling on the sidewalk.   Therefore, persons who undertake to pass over the sidewalks of a city, made unsafe or dangerous by the freezing of recent falls of rain or snow, know their condition and assume the risk, and if they fall by reason of the smoothness of the ice, the law imposes no liability upon the city.

While, however, the city is not responsible for the general slippery condition of its sidewalks caused by the recent falling or freezing of rain or snow, yet the rule does not extend so far as to protect the city from liability for injuries caused to a person by slipping on ice in a street or sidewalk where it has accumulated by reason of a defect in the street or walk or by reason of the neglect to construct and maintain suitable drains to carry off the water : Decker v. Scranton City, 151 Pa. 241 ; Mancross v. Oil City, 178 Pa. 276.   It is the duty of a municipality to keep its streets, including its sidewalks, in a reasonably safe condition so that pedestrians using the sidewalks and exercising care may do so with safety.   A sidewalk may be made defective or dangerous by the accumulation

of ice or snow as well as in other ways and by other means. The municipality, however, is not responsible unless the defective condition of the walk is attributable to its negligence. That is the general rule, and one which applies as well where the sidewalk is defective by reason of the slippery condition of the ice thereon as well as by reason of excavations or other obstructions in the walk. The liability for injuries resulting from the accumulation of ice on a pavement is not confined to cases where the accumulation has resulted in hills or ridges. That is not the only test of liability in such cases, as this court distinctly ruled in Mancross v. Oil City, 178 Pa. 276. There the court sustained the ruling of the trial judge in denying the point submitted by the defendant city that it was " not liable for an injury caused by reason of the slippery condition of the ice and snow upon its walks, unless such injury is caused by the accumulation of ice and snow into hills and ridges so as to render passage dangerous." The trial judge refused the point, and in doing so said : " A city may be liable for an accident caused by the slippery condition of its streets caused by the negligence of its officials, even where the ice and snow do not form into hills and ridges." The accumulation of ridges and hills in ice may cause a pavement to be dangerous and convict the city of negligence, but the city is equally responsible if the sidewalk is made dangerous to public travel by reason of any accumulation of ice and snow caused by the negligence of the city. In other words, if an injury results to a pedestrian by reason of a defective sidewalk, the municipality is liable if the defect, whatever it may be, was occasioned by the municipality's negligence. These principles are settled by numerous authorities in many jurisdictions.

Recurring now to the case in hand, we think the evidence was sufficient to warrant the jury in finding that the plaintiff's injuries were caused by the negligence of the city. They were not caused by the general slipperiness or smoothness of the sidewalk resulting from the precipitation and freezing of recent falls of snow or rain. If they were, of course she could have no claim against the city. They were caused by the condition of the sidewalk beneath the bridge, made unsafe and dangerous to travel by the accumulation of ice, which could, and should, have been prevented by the city. The con-

ditions of the place were peculiar. The sidewalk was not the ordinary and usual open and exposed pavement. On the contrary, it was correctly described as a tunnel. Owing to the grade of the street water falling on the east sidewalk flowed into the tunnel. The water that accumulated on the bridge also fell in and passed through it. The direct rays of the sun never penetrated it. These conditions necessarily caused ice to accumulate beneath the bridge in the winter, and naturally it was liable to remain during the winter months. The water from the walk and that dripping from the bridge formed into ice on the sidewalk in the tunnel. That ice was not reached by the sun and was unaffected by it. The sun melted the ice on the walk above the bridge, but the water would flow to the bridge only to be frozen as it passed upon and over the ice under the bridge. The inlets at either side of the fifty foot avenue gave no sufficient relief to this condition of affairs. The city made no adequate provision for preventing the water falling on the walk, and that dripping from the bridge from flowing into and through the tunnel, or for the removal of the ice which, in winter, was produced by this water. The consequence was, as disclosed by the evidence, that since the construction of the bridge the sidewalk beneath it has been, by reason of ice, unsafe each winter for persons who had occasion to use the street. This danger resulted, therefore, from causes under the control of the city and not from natural causes, such as the recent precipitation and freezing of rain or snow upon ordinary sidewalks. The duty of the city to make this sidewalk reasonably safe for public travel is as imperative as to keep the streets and other sidewalks of the city in a safe condition. As long as this tunnel is kept open and maintained as a public highway by the city, the duty to keep it reasonably safe is imperative, and cannot be evaded or neglected with impunity.

From what has been said it will be observed that it was not a question whether the plaintiff's injuries resulted from a ridge or hill of ice on the pavement beneath the bridge, but whether the icy condition of the pavement made it dangerous and unsafe for pedestrians using the sidewalk, and that such condition was attributable to the negligence of the city. One of the witnesses testified : " It [condition of the pavement] was

from the water falling down the hill, not having a proper drainage off of it, the drippings of the railroad over on the pavement, dripping down, and the water falling down and freezing on the pavement, by not having the proper drainage from the top to get it away from there." In fact, all the evidence in the case bearing on the subject tended to show that this was the cause of the conditions prevailing under the bridge at the time of the accident. And, as we have said, the evidence was ample to show that this unsafe condition of the tunnel had existed in the winter months since the construction of the bridge. It was, therefore, clearly a case for the jury to determine whether the conditions existing there at the time the plaintiff received her injuries were caused by the negligence of the city. This is a street that is frequented by a great many people in winter as well as in summer. It is one of the public thoroughfares of the city which should be kept in a safe condition for travel at all times.

Whether the plaintiff exercised proper care in passing along the sidewalk, and whether she fell from any want of care on her part, were for the jury. It has been argued that as she approached the bridge she saw ice on the pavement, both in and outside the tunnel, and that, therefore, it was negligence for her to attempt to pass through the tunnel. That position, however, is wholly untenable. There was nothing there to admonish her that by the exercise of care she could not pass with safety through the tunnel. She had done so on a previous occasion when the same or similar conditions existed. The danger was not immediate or imminent. The sidewalk was in constant use by the people of that vicinity. Of course, other persons had fallen on the ice there, but many others had passed over it with safety. In fact, just as the plaintiff was entering the tunnel another person came out of it and passed her. There were spots or places in the pavement where there was no ice which the plaintiff attempted to use to avoid the ice. Under the circumstances, therefore, it was not negligence, to be declared by the court, for the plaintiff to use the sidewalk. As said in the recent case of Steck v. City of Allegheny, 213 Pa. 573 (p. 576): " When the testimony shows a defect of such character that the street can be used with safety by the exercise of reasonable care, notwithstanding its

defective condition, it is not for the court but for the jury, to determine whether the injured party performed the duty required of him under the circumstances." Nor was the plaintiff to be driven from the street or prevented the use of the sidewalk by the fact that she, like many others in that community, knew of the icy condition of the walk. As we said in City of Altoona v. Lotz, 114 Pa. 238, 246 : " It is not the law that a resident in a city must remain continuously on his property when the city grossly neglects the repair of its streets, under pain that if he ventures on the streets or walks and suffers injury resulting from the city's default, he can recover nothing. Nor is the resident bound under like pain to abstain from going to church in the evening, or other places, when he may be moved to go by a sense of duty or love of pleasure. On his part it is enough if he takes the ordinary care which ought to be exercised by a prudent man under the circumstances." This street and sidewalk, as we have seen, was in constant use by the public, and while some persons were injured by falling upon the accumulation of ice, the number was small as compared with those who used the walk in safety. The sidewalk under the bridge was kept open and maintained as a place for travel by pedestrians, and hence there was an invitation by the city for the public to use it. It was not error for the court to decline to say to the jury that the plaintiff was negligent in using the sidewalk under the circumstances.

There could be no question under the evidence that the defendant knew of the unsafe condition of the walk. Since the construction of the bridge, eight years previous, it has been dangerous in the winter months, caused by the accumulation of ice resulting from the peculiar conditions existing at the place. These conditions as well as the danger resulting therefrom were obviously and necessarily known to the defendant. The danger had existed for years in the winter season, and hence it is manifest that the city must have had knowledge of it. Two of the witnesses testified specifically as to the existence of ice on the sidewalk at that place during the month of January of the year 1903. What everybody else sees the city must see.

The only error assigned is the refusal of the court below to

give binding instructions to the jury to find for the defendant, and for the reasons stated the assignment is overruled and the judgment is affirmed.