## Joyce, Appellant, *v.* Black.

*Negligence—Fall of ornamental bracket on sidewalk—Presumption—Evidence—Res ipsa loquitur.*

1. In a suit against the owner of a building by a person injured by the fall of an ornamental bracket from the front of the building, the mere fact of the fall of the bracket does not raise the presumption of negligence and the rule res ipsa loquitur does not apply.

2. In such a case it is error not to permit the plaintiff to lay a foundation for affirmative proof of negligence by the testimony of witnesses who examined the building five months after the accident, as to the manner in which the bracket had been fastened, where it has been shown that the conditions at the place where the bracket had been fastened remained the same during the five months.

Argued Oct. 25, 1909. Appeal, No. 149, Oct. T., 1909, by

plaintiff, from order of C. P. No. 4, Allegheny Co., Third Term, 1907, No. 822, refusing to take off nonsuit in case of Joseph F. Joyce v. A. W. Black. Before Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Carnahan, J.

At the trial when John P. Brennen, a witness for plaintiff, was on the stand, he was asked this question:

"Q. I ask you whether or not, when you examined it that day you noticed that there was anything to hold it up in the way of fastening it to the front of this building?"

Objected to by counsel for the defendant, the witness having already been asked that question, which was objected to, and in the light of his testimony and what he could testify to, it was sustained. It assumes that there ought to have been some fastenings there.

The Court: That is a proper assumption in one respect.

Mr. Brennen: I am asking how it was fastened and what it was fastened with, if anything.

Mr. Shaw: That is what he says he does not know.

Objection sustained. Exception to plaintiff. [1]

Daniel F. Crawford was asked this question:

"Q. Without stating how it was fastened, state why you say you are able to tell how it was fastened, from having examined this place five months after the bracket fell down? A. In all things pertaining to building, I have gained considerable knowledge from tearing down old places, remodelling old fronts and making them new. They all have signs showing how it was constructed. In that way we know how to take our bearings. They generally leave some mark to work by. In that way I know what to expect when I start to tear out or build up."

Mr. Brennen: "Q. In other words, every building is built on a design, all designs leading into the same result? A. Yes, sir, we can tell what is an ornament that holds something—what is an ornament that was put there to hold something. They all show you how they were put on and how we are to get

them off.　Q. And does it show, also, how they were held in place?　A. Yes, sir, I have taken similiar fronts to this out, and replaced them with modern fronts."

The Court: "Q. Are you able to state from what you saw positively how that was fastened, or are you simply able to give an opinion how it was fastened?　A. To give an opinion how it was fastened."

Objection sustained, and exception noted to plaintiff. [5]

Mr. Crawford: "Q. I understood you to say yesterday that you had frequently seen this building and this front?　A. Yes, sir.　Q. And I now ask you if you can state, as a matter of fact, how that cornice or bracket was held on the front of that building?　A. I can answer.　Q. How was it held?"

Objected to by counsel for defense, as the witness did not see the bracket or cornice until five months after the accident.

"Q. Did you see it before this accident?　A. I saw the building before this accident.　Q. Well, the front of the building?　A. Yes, sir."

The Court: The witness has testified that his first examination was five months afterwards, although he had seen it frequently before, but he never made any examination until five months after the accident.　We will sustain the objection and note an exception to the plaintiff. [6]

Mr. Crawford: "Q. From your examination of that building in November after this accident, could you not as well tell how that bracket was attached to that frame and held in place as if you had seen it half an hour afterwards?　A. Yes, sir.　Q. Or prior to its falling out?　A. I could tell the manner and mode of construction and what they depended on to hold it there, by looking at it, because I know the way they do it.　Q. How was this one done?　Was it done in the same way that others of that kind are? "

Objected to by counsel for defense, as the same question. Objection sustained. [7]

F. J. Osterling, an architect, was asked this question:

"Q. When you worked on the building, did you also look at the bracket when you were fixing the building up?　A. Yes, sir, looked at it in a general way.　Q. Mr. Osterling, your

office was close by this building, was it not, for a number of years? A. Yes, sir, I had an office in the building adjoining this one at one time. Q. And from that will you state whether or not you had any knowledge from the fact that your office was close by, and that you have remodelled this very front, and your examination of it at that time, can you say how that bracket was held at that time? Can you tell, that is the question."

Mr. Shaw: I have no objection to the witness saying whether he can express an opinion or not, but I object, as incompetent and irrelevant, to the witness basing his opinion upon an examination made five or six months after the accident.

The Court: He can answer yes or no to that question. Just answer it yes or no, or with any qualifications you may wish; but do not state your opinion until we come up to that question.

"A. Yes, I can."

Mr. Brennen: "Q. Now, I ask you how it was held?"

Objected to by counsel for defendant, as incompetent and irrelevant. Objection sustained. [8]

Mr. Osterling: "Q. Tell us how that bracket or cornice was held in place on the front of this building, over the door on the left-hand side as you go in the door going upstairs.

Objected to by counsel for defendant, as incompetent and irrelevant. Objection sustained. [9]

The court entered a compulsory nonsuit, which it subsequently refused to take off.

*Errors assigned* were (2) refusal to take off nonsuit; (3, 5–9) rulings on evidence, quoting the bill of exceptions.

*W. J. Brennen,* for appellant, cited: Fisher v. Ruch, 12 Pa. Superior Ct. 240; Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497; Kane v. Philadelphia, 196 Pa. 502; McCafferty v. R. R. Co., 193 Pa. 339; Spear v. P., W. & B. R. R. Co., 119 Pa. 61; Penna. R. R. Co. v. Miller, 87 Pa. 395; Penna. R. R. Co. v. Weiss, 87 Pa. 447; Allen v. Willard, 57 Pa. 374; Hungerford v.

Bent, 55 Hun, 3; Murray v. McShane, 52 Md. 217; Welfare v. Ry. Co., L. R. 4 Q. B. Cases, 693; Coupland v. Hardingham, 3 Camp. 398; Salisbury v. Herchenroder, 106 Mass. 458; Reg v. Watts, 1 Salk. 357; Riegert v. Thackery, 212 Pa. 86; Booth v. Dorsey, 208 Pa. 276; Webster v. Coal & Coke Co., 201 Pa. 278; Corbin v. Philadelphia, 195 Pa. 461; Homan v. Stanley, 66 Pa. 464; Mullen v. St. John, 57 N. Y. 567; Byrne v. Boadle, 2 Hurlst & C. 722; Scott v. London Dock Co., 3 Hurlst & C. 596; Dehring v. Comstock, 78 Mich. 153 (43 N. W. Repr. 1049); Mintzer v. Greenough, 192 Pa. 137.

*George E. Shaw*, of *Reed, Smith, Shaw & Beal*, for appellee, cited: Oil Co. v. Torpedo Co., 190 Pa. 350; Kepner v. Traction Co., 183 Pa. 24; Smith v. Electric Light Co., 198 Pa. 19; McKenna v. Paper Co., 176 Pa. 306; Reardon v. Thompson, 149 Mass. 267 (21 N. E. Repr. 369); Weaver v. Steel Co., 223 Pa. 238.

OPINION BY MR. JUSTICE BROWN, January 3, 1910:

On the evening of June 8, 1906, the appellant was sitting on a chair on the pavement in front of a building No. 602 Liberty avenue, Pittsburg. While sitting close to this building and near the adjoining one—No. 600—an ornamental bracket from that building fell and struck him, and this suit is for the recovery of damages for the injuries sustained, due, as is alleged, to the failure of the appellee to have the bracket properly and safely fastened to the building. The learned trial judge properly refused to sustain the contention that the fall of the bracket was in itself evidence of negligence.

There was no negligence in having the bracket for ornamental use on the front of the house, and its mere fall raised no presumption that it would not have fallen except for the negligence of the owner of the property in not having it safely attached to the building. The rule res ipsa loquitur is not in the case, and affirmative proof by the appellant of the appellee's negligence was essential to a recovery. Such proof might have been submitted, but by the exclusion of the offers which are the subjects of the third, fifth, sixth, seventh, eighth and ninth

assignments of error the appellant was not permitted to lay a foundation for the support of his charge of negligence. John P. Brennen, assistant superintendent of the bureau of building inspection for the city of Pittsburg, examined the front of the building about five months after the bracket fell. He testified that he had passed the building almost daily from the time the accident occurred up to the day he made the examination and there was no change whatever at the point from which the bracket fell. He was then asked whether when he examined the building he found there had been anything to hold up the bracket and fasten it to the building, but was not permitted to answer. D. F. Crawford, a contractor and builder, who also examined the building about the same time as Brennen, testified that he could see the way in which the bracket had been attached, but when asked to tell how, his answer was excluded. F. J. Osterling, an architect, and third witness, who had examined the building was asked whether, from his examination of it, he could say how the bracket had been held, but he, too, was not permitted to answer. The reason given for not permitting these three witnesses to answer was that their examination of the building had been made five months after the accident, but the court evidently overlooked the testimony of Brennen that he had passed the property almost daily from June until December and that there had been no change in the front of it at the point where the bracket had been attached. In addition to this, though called after the foregoing three witnesses, Samuel W. Black, the appellee's agent in charge of the building, stated that from June to December there had been no change in the front of the building at the point stated. Under this state of facts Brennen, Crawford and Osterling were qualified to tell the jury how the bracket had been attached, and this would have been the first particular in the proofs required from the plaintiff to establish his allegation of negligence.

After having shown how the bracket had been attached, it would have been competent for the appellant, if able to do so, to submit proof that the way in which it had been attached and maintained was improper and unsafe, rendering it liable

to fall at any time, and that the owner of the building so knew, or ought to have so known. He might not have been able to come up to this measure of proof, but it was his right to have the opportunity to do so, if he could, and that right was taken away from him when he was not allowed to take the first step towards it. The third, fifth, sixth, seventh, eighth and ninth assignments of error are sustained and the judgment is reversed with a procedendo.