Beebe et al. *v.* Philadelphia, Appellant.

Argued April 20, 1933. Before Frazer, C. J., Simpson, Schaffer, Drew and Linn, JJ.

*John J. K. Caskie*, with him *Aaron W. White*, Assistant City Solicitors, and *David J. Smyth*, City Solicitor, for appellant.

*Irwin F. Holt*, with him *Ralph N. Kellam* and *J. Webster Jones*, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1933:

Plaintiffs, husband and wife, brought this action against the City of Philadelphia to recover damages for injuries received by the wife when she fell upon a sidewalk on which it is alleged snow and ice had been negligently allowed to accumulate in hollows and ridges. From the verdicts and judgments for plaintiffs the city appeals.

One of the questions raised is: Was there sufficient time between the snowfall, which was an unusual one, and the accident to charge the city with negligence in failing to cause the removal of the accumulation of ice and snow from the sidewalk?

On Saturday morning, January 28, 1928, about six o'clock, a severe snowstorm set in, characterized by some of the witnesses as a blizzard. Snow continued to fall throughout that day and did not stop until about four o'clock on Sunday morning. The snowfall reached a depth of about ten and a half inches. There were snow flurries on Monday night between 10:50 and midnight. On Tuesday, the 31st, the weather cleared. The temperature was below freezing during the entire period with the exception of Tuesday afternoon, when, at three o'clock, 34 degrees was registered.

The plaintiffs were walking down Market Street to the ferry about six o'clock on Tuesday evening. While crossing the pavement of No. 108 Market Street, Mrs. Beebe fell and received the injuries which give rise to

this suit. It was testified that the snow had not been removed from the pavement on which she fell. The snow was described by plaintiffs' witnesses as entirely covering the pavement, part of it being icy with hills and ridges ranging in height from two to six inches.

Philadelphia is the third largest city in the United States. It has 4,000 miles of paved sidewalks and about 1,970 miles of paved streets. There are 450,000 dwellings and stores within its confines. To remove such a snowfall as the one we are considering in such an area is a task of great magnitude. The municipality must have a reasonable time to complete such an undertaking before it can be charged with a breach of duty.

The responsibility for snow removal is in the first instance on the occupiers or owners of property. The duty of the municipality is secondary and supplemental: McLaughlin v. Kelly, 230 Pa. 251. The rules governing the liability of a municipality for the condition of its streets and pavements have been well defined by many decisions. One of the best summaries is found in Bailey v. Oil City, 305 Pa. 325. The court said at page 327: "A municipality is, in general, not liable for accidents resulting from the icy condition of its streets and walks. ...... This is so because of the practicable impossibility of keeping cartways and sidewalks free from ice in this climate during the winter season. ...... It is, however, a city's duty to cause the removal from the walks of such substantial ridges or hills of ice or snow as constitute an obstruction to travel. ...... It must appear either that the city had actual notice of the obstruction or that it had existed so long as to amount to constructive notice." See also Green v. Hollidaysburg, 236 Pa. 430.

It is to be remembered that the question to be determined is not one of safety for the traveler but of secondary negligence on the part of the city: Kohler v. Penn Twp., 305 Pa. 330. Many of the cases cited by the appellee are not pertinent to the inquiry we are pursuing, such as the following in which the icy condition resulted from

some prior defect which was due to the negligence of the city. A defective drain pipe (Dean v. New Castle, 201 Pa. 51); a broken rain spout (Gross v. Pittsburgh, 243 Pa. 525); a defective gutter (Manross v. Oil City, 178 Pa. 276). Where, however, the only alleged negligence is, as here, permitting the accumulation through the action of natural forces of dangerous ridges of ice, the plaintiff must show not only that there is such a condition as to constitute a serious obstruction to traffic but that it has existed a sufficient length of time to constitute constructive notice to the city and to allow the latter a reasonable period within which to remove the danger. Furthermore, what might be reasonably required of the city in isolated situations might be a most unreasonable imposition of duty where conditions are general throughout its confines due to a heavy fall of snow. Therefore, the rule as to the length of time which would convey implied notice of a defective pavement condition applied in the line of cases referred to above, in which there were antecedent conditions on the pavement which put the municipality on notice that there would likely be dangerous accumulations of snow and ice in wintry weather, does not here apply.

When did the city have implied notice that the occupant of 108 Market Street had failed to observe the duty of removing the snow from the pavements? The snowstorm was not over until early on Sunday morning. That day so far as snow removal was concerned we think may be left out of account because of the terms of the city ordinance of March 31, 1904, amending the ordinance of September 23, 1864. It provides: "It shall henceforth constitute and be a nuisance to suffer or permit snow to remain more than *six working hours* after the same may cease to fall on any paved footway or gutter of the said city in front of or adjoining any church, public building, house, store, shop, stable or tenement of any kind, or adjoining the side yard thereof or vacant lots, in any part of the City of Philadelphia, except rural or farming sec-

tions where no sidewalks have been established and the occupier, or the owner of such premises, if unoccupied, shall be liable for the penalty prescribed for such offense by said ordinance of September 23, 1864, and the supplements and amendments thereto." From this enactment it will be seen that the occupier or owner of a property has six *working hours* after the cessation of a snowfall within which to remove snow from his pavement. The working hours in this instance would begin at eight o'clock on Monday morning, and allowing for midday meal time, would not end until three o'clock that afternoon. It could not be reasonably said that the city would have violated its duty to inspect its 4,000 miles of sidewalk, and where the snow had not been cleared away from them, to cause its removal between three o'clock Monday afternoon and six o'clock on Tuesday evening when the plaintiff fell. Such a lapse of time is not sufficient to visit the city with constructive notice of the alleged defective condition of the pavement: Swan v. Indiana Boro., 242 Pa. 596. While it is impossible to fix any definite time as a minimum from which a jury should or should not be allowed to find constructive notice of such a defect, it is clear that under the conditions here presented a jury should not be permitted to find that sufficient time had elapsed for the city to be charged with constructive notice of the defect and with negligence in failing to correct it. We think if the defect was due to other inequalities in the pavement than those produced by snow it would not be contended that such a short space of time was sufficient to visit notice to and fix liability upon the municipality. There is no reason apparent to us why defects due to snow accumulation should bring about a shorter time than others of like character would.

The closest case cited by appellee is Llewellyn v. Wilkes-Barre, 254 Pa. 196. In that case the plaintiffs' witnesses testified the accumulation of ice had existed for four or five days, but the court noted in its opinion

that a police officer called by the defendant admitted that the ice might have been there for more than a week. In the other cases cited by the appellee in which the only negligence was the accumulation of ice from natural causes and in which the case was held properly submitted to a jury the time ranged from a week to a month.

The appellee contends that the testimony of the police officer, who said that he told the tenant to remove the ridges on Monday morning, showed actual notice to the city. The same officer, however, testified that when he later returned on the same day he did not see any ice. Even if it be conceded that this constituted actual notice, still the accident occurred little more than twenty-four hours thereafter. To charge the city with negligence within so short a period would mean that it had sufficient time to notify the occupant to clear the pavement and then to take steps itself when it became apparent that the occupant had done nothing. Considering the severity of the storm and the size of the city, a jury should not be permitted to substitute its judgment for that of the city authorities in selecting the sections of sidewalk which should receive first attention. This is indicated in Martin v. Phila., 54 Pa. Superior Ct. 563, at page 573, and in Stanka v. Shamokin Boro., 66 Pa. Superior Ct. 553, at page 556.

The fact that the city had a crew of men in the vicinity on Sunday morning engaged in clearing snow away would not visit the city with actual notice of a defective condition of the pavement in question. The witness called by defendant, who testified to the presence of this snow cleaning crew, testified also that the crew actually cleared the snow from the pavement of 108 Market Street, and that there was no snow remaining except such as could be swept off with a broom, and that he did sweep it off on Monday morning. If such was the case, there was no notice, because there was no defective condition left. Plaintiffs cannot show actual notice to the city through this witness without having all his evidence

taken into consideration. When this is done, no notice of a defective condition is shown.

Being of opinion that neither constructive nor actual notice of the alleged defective condition of the pavement was brought home to the city soon enough to charge it with negligence, we cannot sustain a recovery against it.

The judgments are reversed and are here entered for defendant.