Hutchison, Appellant, *v.* Montgomery Ward and Company et al.

Argued September 28, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused February 7, 1950.

*J. Campbell Brandon,* with him *W. D. Brandon, Hugh S. Millar* and *Brandon & Brandon,* for appellant.

*Lee C. McCandless,* for appellee.

OPINION BY MR. JUSTICE PATTERSON:

This was a trespass action for personal injuries instituted by Alice Hutchison, appellant, against Montgomery Ward & Company, appellee, and Cote Realty Company, occupier and owner, respectively, of a building on Main Street, in the City of Butler, Pennsylvania. Cote Realty Company was relieved of liability by a directed verdict and the jury found in favor of Mrs. Hutchison in the amount of $3,000. The court below entered judgment *non obstante veredicto* for Montgomery Ward & Company, after argument, and Mrs. Hutchison has appealed.

About 2:00 P.M. on December 29, 1945, during a thawing temperature, snow and ice, perhaps a bushel in quantity, fell upon appellant from the roof of the building occupied by appellee, as she was walking on the abutting public sidewalk. The mass that fell contained lumps of snow and ice three or four inches wide and four or five inches long, and was described as having "a

dark color", as "blackish", "sort of blackish", and "dirty". A witness, without objection, said, "it wasn't fresh; it had been colored with soot", and another witness testified, "It was just like snow and ice that has accumulated at some place and later thaw[ed] out and where a smoke had colored it." The building has a frontage of 100 feet on Main Street and is over 40 feet high, with a mansard type roof, constructed on a grade of about 60 degrees and measuring twelve feet, eight inches from ledge to ridge pole. The ledge is thirteen inches in width and contains a gutter six inches wide and eight inches deep. There had been a heavy snowfall of sixteen and one-half inches on December 24, which was reduced to three inches by December 27, on which date an inch of snow fell, with the temperature ranging from 28 to 32 degrees. On Friday, December 29, the day of the accident, the snow and ice were thawing in a temperature ranging from 36 to 42 degrees.

No complaint is made that the court erred in directing a verdict for the owner, Cote Realty Company. The sole question is whether it was error to enter judgment for appellee notwithstanding the verdict in favor of appellant. On this question, the opinion of the court below states: "Considering the evidence that the snow had melted away to the extent of at least four inches, we are of the opinion that there was no extraordinary condition prevailing at the time of the accident and prior thereto which would cause the [appellee], as an ordinary, careful, prudent person, to believe that snow and ice was likely to come out over the gutter and the coping and fall to the street . . . Clearly there was no actual notice of any negligent condition existing upon the roof . . . Taking into consideration that there is no evidence of any previous falling of snow and ice from the roof; that the heavy snowfall had been reduced to one-fourth of its original size; and that a proper and standard constructed gutter and coping existed immediately adjacent

to the street; we do not believe that under such circumstances the [appellee] could be visited with any constructive notice of a negligent condition existing upon the roof. Although the accident was most unfortunate, there was no absolute liability upon the [appellee] company, and we can come to no other conclusion than that the [appellant] has failed to meet the burden of proof imposed upon her."

Appellant may not recover by merely showing that she was injured. There must be evidence to support a finding of a breach of the occupier's duty to a user of the sidewalk. Compare *Pope v. Reading Company,* 304 Pa. 326, 331, 156 A. 106; *Beebe et al. v. Philadelphia,* 312 Pa. 214, 167 A. 570; *Beck v. Germantown Cricket Club,* 228 Pa. 173, 77 A. 448; *Vendig v. Union League of Philadelphia,* 291 Pa. 536, 140 A. 503. The evidence does not support the contention that it was a mass of ice and snow permitted by appellee to collect in the gutter or on the ledge of the building which fell and injured appellant. On the contrary, her own evidence establishes that it was a part of the normal accumulation on the roof itself that fell, covering an area of about two square feet. Any hazard created by the extraordinary snowfall on December 24 had been eliminated by melting. The depth of the snow had been reduced to three inches and there was an additional inch of snowfall on December 27, making a total of only four inches of snow on the roof on December 29, the date of the accident. The building was of a common and approved type of construction and was in good repair. It was equipped with metal snow-guards or ice-breakers, spaced eighteen inches apart, and with a thirteen-inch wide ledge at the lower edge of the roof containing a box-type gutter six inches wide and eight inches deep, as precautions against falling ice and snow. There is no testimony that snow or ice had fallen from this roof on any prior occasion and no evidence that the accumulation on the roof was of an

unusual nature, differing in any way from that existing on other roofs throughout the community in general, or that the prevailing weather conditions were abnormal, considering the season of the year, to indicate a necessity for additional precautions on this particular occasion.

To permit a recovery under these circumstances would be to hold that the owner or occupier of a property must prevent falling ice and snow at his peril. No Pennsylvania case has been cited, however, to support such a proposition. Our law imposes no absolute duty on an owner or occupier of property to keep his premises free from ice and snow at all times: *Whitton v. H. A. Gable Company,* 331 Pa. 429, 431, 200 A. 644. The question is not one of safety but of negligence: *Ross et al. v. Pennsylvania Railroad Company,* 355 Pa. 119, 121, 49 A. 2d 370. As recognized by this Court in *Rickey v. Armour,* 293 Pa. 127, 129, 141 A. 841, "Gutters along the edges of eaves will clog up from ice and snow and overflow under certain weather conditions. This is inherent in the nature of eaves and gutters, just as it is in roofs without them, and their maintenance could not ordinarily be held negligent." To charge the owner or occupier with culpability in such a case it must not only appear that the condition existed for so long a time as to visit him with knowledge of it, but must also appear that the danger was sufficiently obvious that he should have realized that someone might be injured because of it: Restatement, Torts, section 364. Clearly the mere fact that snow or ice fell from the roof is not of itself sufficient proof of negligence. It was incumbent on appellant to show some unusual condition existing before the accident that would lead appellee, through its employees, in the exercise of reasonable and ordinary care, to believe that additional precautions were required. See *Pieckowicz v. Oliver Iron & Steel Company et al.,* 351 Pa. 209, 212-213, 40 A. 2d 416.

The present case is to be distinguished from cases like *Reedy v. Pittsburgh,* 363 Pa. 365, 69 A. 2d 93, where the pedestrian was injured by ice on the sidewalk which formed as a result of antecedent negligence in permitting the premises to become defective. Here, the presence of snow on the roof of the building occupied by appellee was not caused by any act or omission on its part, but was a natural phenomenon incident to our climate. Also distinguishable are *Klepper v. Seymour House Corporation,* 246 N. Y. 85, 158 N. E. 29, 62 ALR 955, and similar cases, relied upon by appellant, where the building was so constructed as inevitably to collect snow and ice and discharge it into the street, or where it appeared from the evidence that snow-slides from the roof during the winter months occurred with such frequency as to charge the owner or occupier with notice of the dangerous condition.

Judgment affirmed.

PER CURIAM, January 16, 1950:

The foregoing opinion was prepared by the late Justice PATTERSON. It was adopted by a vote of the Court before his death. It is now filed as the opinion of the Court.

———

CONCURRING OPINION BY MR. CHIEF JUSTICE MAXEY:

I concur in the majority opinion. There is no substantial dispute about the fact that "perhaps a bushel of snow" fell from the defendant's roof onto the plaintiff and injured her. Whether the snow which fell upon the plaintiff could be called "a mass of snow and ice" is open to question for the word "mass" connotes the idea of considerable size and that word is usually not applied to a mere bushel of anything. However, the question is not *how much* snow fell on the plaintiff, but *was her*

*injury due to the defendant's negligence.* Since negligence is want of care under the circumstances, what *are* the circumstances?

We can take judicial notice of the fact that in the latitude of Butler [1] heavy falls of snow are the usual incidents of winter. The record discloses that on December 24, 1945, there was in Butler a sixteen and a half inch snowfall and in 1944 a twenty-seven inch snowfall. Is it the duty of a possessor of a building in a latitude in which such heavy snows are experienced, to immediately clean the roof after every snow-fall? If snow falling from roofs frequently causes serious injury to persons nearby, the answer must be "yes". If it is unusual for snow falling from roofs to injure anybody, the answer must be "no". Individuals are not required to alter conditions which in the normal course of events injure nobody. If, for example, a man has in his yard, near the sidewalk, a large tree which is obviously in such a decayed condition that its fall is likely, it is his duty to remove that menace without delay. On the other hand, if he has a large sound tree whose limbs extend over the sidewalk, he does not have to remove these limbs lest by some rare chance they become detached and fall on some passer-by. In the first example, the tree owner is charged with knowledge that his tree has become a menace; and in the second example he has no reason to anticipate that the tree limbs are likely to fall.

All of us who reside in the northern half of Pennsylvania have frequently seen snow falling from roofs upon passers-by, and upon social and business invitees to homes. We have seen such falls cause momentary annoyance. But the individual who has ever seen or heard

---

[1] Butler is on a line drawn east and west parallel to the southern boundary of Pennsylvania, *half way* between that line and the straight line of the northern boundary (disregarding the small northwestern projection).

of anyone being seriously injured by a fall of snow is rare indeed.

To clear snow from the roof on one's house is a difficult and hazardous undertaking. Very few householders have either the ability or the agility to do it. If they attempted the feat they would probably bring disaster upon themselves by falling from the roof. Neither is it easy to secure help to remove snow from roofs. To clear all the roofs in any municipality from snow in a normal winter would require the help for weeks of an army of laborers and it would be difficult to secure them. Only young and skillful men are qualified for such work. When two years ago there was a very heavy fall of snow in New York City it required millions of dollars and thousands of laborers and much time to remove snow from the streets and sidewalks, without any attempt to remove it from the housetops.

No one has ever made a clearer statement of the law of negligence than Justice HOLMES when, in *Commonwealth v. Pierce*, 138 Mass. 165, 179, he said: ". . . if the thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given case it would do damage, a person who did not foresee it, and who had no warning, would not be held liable for the harm. If men were held answerable for everything they did which was dangerous in fact, they would be held for all their acts from which harm in fact ensued. The use of the thing must be dangerous according to common experience, . . ."

This statement applies to this case. An accumulation of snow on one's roof is "generally supposed to be harmless". The depth of the snow at the time it fell on the plaintiff was only four inches. It was somewhat iced but that fact was not known to anybody until after it had fallen. Ordinarily four inches of snow upon a roof is not potential for harm and "only a specialist would fore-

see" that it might cause harm. If a person looks out of the second or third story window of his home during the days following a heavy snowfall he is sure to see more than four or five inches of snow on the roofs of neighboring homes. It usually is left there until the sun melts it and it falls off as snow, water, ice or frozen snow.

According to common experience the chances of anyone's being harmed by snow or particles of ice falling from a roof are negligible, and these chances are only incidents of residence in a rugged winter climate, just as the chance of being hit by a falling cocoanut is an incident of residence in a tropical climate. In winter climates social invitees, grocery boys, newsboys, postmen, milkmen, and servants pass points adjacent to homes where snow falling from the roofs would reach them, without apprehending they are in any place of danger, and that ordinarily they are not in a place of danger at such times is evidenced by the fact that no one has cited any Pennsylvania cases in which anyone has recovered damages for injuries done by falling snow.

In the cited case of *Beebe v. Phila.*, 312 Pa. 214, 167 A. 570 (1933) the accumulation of snow and ice which caused the injury was on a sidewalk and not on the roof of the house. According to common experience snow and ice upon a sidewalk is a menace to pedestrians and our official reports are replete with cases in which pedestrians have recovered damages because of slipping on ice and snow on sidewalks.

In the cited case of *Pope v. Reading Company*, 304 Pa. 326, 334, 335, 156 A. 106, the thing which fell and caused the injury was a piece of cement from the top of a wall. There is a vast difference between falling *cement* and falling *snow*. We said in that case: "... pieces of concrete had been dropping from the coping of the wall for at least two weeks before the accident. Therefore, de-

fendant was chargeable with knowledge of its dangerous condition and should have taken forethought of the injury it would likely inflict upon persons at its base. It was the duty of defendant to guard against the manifest and appreciable chances of human harm naturally arising from these conditions. . . . A long-standing wall twenty-three feet in height cannot be regarded as something so completely free from lurking dangers as not to require inspection and care, particularly when it is subject to the frequent jarring of passing trains. It is a matter of common knowledge that walls crumble and cause injuries. In the case before us, pieces of concrete had been dropping from the coping of the wall for at least two weeks before the accident."

Appellant's paper book cites the case of *Klepper v. Seymour House Corporation*, 146 N. Y. 85, 158 N. E. 29. That case is easily distinguished on its facts from the instant case. There "a mass of ice and snow" which fell upon the plaintiff weighed about 150 pounds. It fell from the roof of the Seymour House, which had attached to it a cornice which extended out over the street sixteen to twenty inches. It sloped at an angle of fifty degrees. As the court pointed out: "After heavy storms, snow and ice would accumulate on this slanting cornice and slide off onto the sidewalk in a mass of varying dimensions and weight. This had happened three or four times during the winter previous to the injury to the plaintiff. It had happened every winter. Members of the city government were familiar with the condition. The policeman reporting it to his superior was virtually told to mind his own affairs. . . . The frequency with which this thing had happened during all the winters since the defendant was the owner of the property was sufficient to charge it with notice of the condition." If in the instant case it had been shown that in previous winters snow and ice had been allowed to accumulate on defendant's building and slide off on the sidewalk in masses weighing 150

pounds and that the matter had been brought to the defendant's attention, plaintiff would have had a good case for recovery of damages, but she was not able to show such facts in support of her claim in the instant case.

In the cited case of *Coman v. Alles*, 198 Mass. 99, 83 N. E. 1097, the facts are wholly distinguishable from the facts in the instant case. There a person fell by slipping on the ice on or near the sidewalk. There was no injury from ice or snow falling from any roof.

The cited Section 364 of the Restatement of Torts refers to artificial conditions on land or property. Snow is *not* an "artificial condition" created by the landowner himself or by a third party.

Section 368 of the Restatement of Torts in describing conditions on one's property imposes liability only when the condition involves an unreasonable risk to others. Certainly the presence of four inches of snow on a roof does not involve an unreasonable risk except to the man who would go up to remove it. The Comment in Section 368 states that: "A possessor of land is not required to fence or otherwise guard a dangerous excavation caused by a flood or freshet, even though it is immediately contiguous to a public highway." If this is sound law certainly a possessor of a piece of real estate is not required to remove four inches of snow even if it lies on property contiguous to a highway. Snow on a roof is much less dangerous to pedestrians than is the excavation referred to in the above comment.

It would be unreasonable to place upon every possessor of a home or other building the burden of removing promptly from his roof each fall of snow as it occurs during a winter. A municipal ordinance requiring the possessors of homes or other buildings, situated on public streets, to remove falls of snow promptly from the roofs of their buildings would be a legal rarity. That cases of recovery for injuries caused by snow falling from roofs are almost unknown is evidenced by the fact that

only a negligible number of such cases are reported in the law books (apparently there are none in Pennsylvania) although perhaps one-half of the 48 American states are in zones where falls of snow in winter are commonplace.

Courts have never subscribed to the unjust and impracticable rule that the sustaining of mere injuries arising from some instrumentality within the control of another is proof of that other's negligence (except in that limited number of cases where the doctrine of *res ipsa loquitur* can be invoked). This Court said in *Hoag v. Lake Shore & Michigan Southern Railroad Co.,* 85 Pa. 293: "There is a possibility of carrying an admittedly correct [legal] principle too far. It may be extended so as to reach the reductio ad absurdum, so far as it applies to the practical business of life. We think this difficulty may be avoided by adhering to the principle substantially recognized in The Railroad Company v. Kerr, [12 P. F. Smith 353] and The Railroad Company v. Hope [30 P. F. Smith 373], that in determining what is proximate cause [of injury], the true rule is, that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstances of the case, *might and ought to have been foreseen by the wrongdoer as likely to flow from his act.*" (Italics supplied.)

President Judge Graff of the court below correctly enunciated the law of Pennsylvania when he said in his opinion: "The mere happening of an accident and injury does not prove negligence. The unexplained fall of an object from a building is not sufficient to render the owner thereof liable for negligence: Joyce v. Black, 226 Pa. 408; Hartman v. Miller, 143 Pa. Super. Ct. 143. The burden of proof therefore rests upon the plaintiff in this case of establishing negligence upon the part of the defendant before there can be a recovery. The only evidence offered in this respect is the falling of the ice

and snow causing the accident; the sharp slope of the roof toward the street; and the extraordinary snowfall upon December twenty-fourth, five days previous to the time of the accident; together with the melting down of the sixteen and one-half inch snowfall until it was four inches on the date of the accident."

In the *Joyce v. Black* case this Court held that in a suit against the owner of a building by a person injured by the fall of an ornamental bracket from the front of the building, the mere fact of the fall of the bracket does not raise the presumption of negligence and the rule res ipsa loquitur does not apply. Certainly if the fall of an ornamental bracket from the front of a building does not support a claim of negligence against the owner of the building, the common phenomenon of snow falling from the roof of a building in winter does not support any claim of negligence made against the occupier of the building. The *Joyce v. Black* case was cited and its controlling principle re-enunciated by Mr. Justice HORACE STERN, speaking for this Court, in *Doerr et al. v. Rand's et al.*, 340 Pa. 183, 16 A. 2d 377.

I would affirm the judgment of the court below.

----

DISSENTING OPINION BY MR. JUSTICE LINN:

I think this decision creates an undesirable exception to the general rule imposing liability on the possessor of land for damage resulting from dangerous conditions negligently allowed to remain on the land and that the court reaches its conclusion by taking an erroneous view of the evidence.

1. The erroneous view of the evidence results from the failure to apply the rule that a plaintiff who has been deprived of his verdict by a judgment n. o. v. is entitled to have the reviewing court consider only the evidence which supports the verdict and to give him the benefit of every inference of fact reasonably deducible

from the evidence: *Sorrentino v. Graziano*, 341 Pa. 113, 17 A. 2d 373 (1941) ; *Phillips v. Phila. Transp. Co. et al.,* 358 Pa. 265, 56 A. 2d 225 (1948). The effect of not applying the rule will appear in comparing an extract from the opinion with the evidence. The opinion states, "The evidence does not support the contention that it was a mass of ice and snow permitted by appellee to collect in the gutter or on the ledge of the building which fell and injured appellant. On the contrary, her own evidence establishes that it was a part of the normal accumulation on the roof itself that fell, covering an area of about two square feet. Any hazard created by the extraordinary snowfall on December 24 had been eliminated by melting. The depth of the snow had been reduced to three inches and there was an additional inch of snowfall on December 27, making a total of only four inches of snow on the roof on December 29, the date of the accident." Comparing that with the evidence, and beginning with the statement that "the evidence does not support the contention that it was a mass of ice and snow permitted by appellee to collect in the gutter or on the ledge . . ." I call attention to testimony which should make it impossible for this Court to reach that conclusion. It is agreed that a mass of snow and ice fell on plaintiff during a thawing temperature ranging from 36 to 42 degrees the afternoon of December 29 ; the opinion describes it as "perhaps a bushel in quantity." It is not disputed that it fell from the ledge where the appellee had permitted it to accumulate; though it could easily have been cleared off before as it was cleared after the accident, as defendant's witnesses testified. Some idea of the accumulation and the location from which it came, may be derived from the fact that what fell on the plaintiff exposed a space on the slope of the mansard roof of "about two square feet," as described by witnesses who saw it while standing on the sidewalk below. Defendant's witnesses testified that, after the accident,

inspection revealed an accumulation of 3 to 4 inches of snow on the lower part of the roof near the edge (N. T. 80, 81, 102). Therefore, since there was only one inch of snowfall between December 24th and December 29th, much of the snow must have been on the ledge four or five days.[1] I must also disagree with part of the next statement in the opinion, that "Any hazard created by the extraordinary snowfall of December 24 had been eliminated by melting. The depth of the snow had been reduced to three inches and there was an additional inch of snowfall on December 27, making a total of only four inches of snow on the roof on December 29, the date of the accident." This Court cannot, with due regard to the rule, properly make such a finding of fact. Whether melting had eliminated the hazard would ordinarily be for the jury if nothing else were involved, but here there is additional evidence on the subject for the jury's consideration. The jury could find from the evidence (and such a finding is implied in the verdict) that the foreseeable danger continued and was increased by the alternate freezing and thawing of the accumulation of snow and ice on the ledge and in the gutter and alongside the slope of the mansard roof on which the patch two feet square was exposed by the mass which fell on plaintiff. Indeed it was the melting over a period of days which changed otherwise harmless snow into a mass containing chunks of ice as large as an apple and icicles 3 to 4 inches in width and 4 or 5 inches long (N. T. 14, 28). Even after part fell on plaintiff, there still remained a dangerous accumulation of it on the ledge which defendant promptly removed. Mr. Holliday,

---

[1] The occupier is of course entitled to a reasonable time to remove snow after it has fallen. In *Beebe v. Phila.*, 312 Pa. 214, 167 A. 570 (1933), it appeared that the ordinance allowed six working hours after the snow ceased. There was no such ordinance in Butler, where, of course, the jury would be called on to consider what the reasonable time would be.

defendant's assistant manager, testified that the building is in "the most active business portion of the city," which is also a fact of importance in considering the measure of care required of defendant to persons using the sidewalk in front of the building.[2] Mr. Holliday also testified: "There was snow on the roof; there was snow on the sloping roof up there. There was a patch there that had broken loose and come down. I would say a patch possibly two feet square. . . . It was between the two dormers on the left hand side of the building as you start in." Referring to the precise location of the patch, in order to describe the place on the mansard slope from which the mass fell, he said it was "right up from the edge of the slate. It started up the roof a little ways but it started in front." Mr. Patterson, an eye witness and disinterested bystander, testified, "I don't think a bushel basket would have held what was in this bunch of snow and ice"; he saw the "chunks of ice." There were corroborative eye witnesses. Reading the evidence which supports the verdict, this court should reject the inferences made in the majority opinion; they should be rejected because they are opposed to the facts which the jury had the right to find and doubtless did find as the basis of its verdict.

It is beyond dispute that on the thirteen inch ledge extending outward from the sixty degree slope of the mansard roof, twelve feet high, there remained, following a heavy snow of a week before, an accumulation of snow and ice partly lying against the slope, that had

---

[2] For example, in *Pope v. Reading Co.*, 304 Pa. 326, 331, 156 A. 106 (1931), Mr. Justice Maxey said. "On account of the fact that ordinarily more people pass on the sidewalk in front of one's property than are ever likely to pass over or congregate on a lot alongside of one's property, the person in possession of property is held to a higher degree of care in respect to the safe-guarding of a wall or other structure in front of that property and near a street or footway than he is to his wall or structure not adjoining a public highway or footway."

been forming in thawing and freezing temperatures for several days during which only one inch of snow fell. By means of the dormer windows, this accumulation, which was near the windows could easily have been cleared off, as it was later cleared. One of defendant's witnesses, Derewecki, testified that after the accident he cleared away the accumulation by coming out of the dormer window and walking "the ledge." Though such removal is not evidence of negligence it is evidence of accessibility to the roof.

Confronted with that evidence supporting the verdict, this Court should not disregard but should apply the familiar rule accepting the evidence supporting the verdict; and rejecting what is inconsistent with it; it would then be impossible to say, as the Court does say, that "the evidence does not support the contention that it was a mass of ice and snow permitted by appellee to collect in the gutter or on the ledge. . . ."

2. The decision creates an undesirable exception to the general rules of liability of the possessor of land. The rules are stated in sections 364 and 368 of the Restatement, Torts: Section 364 states, "A possessor of land is subject to liability for bodily harm caused to others outside the land by a structure or other artificial condition thereon, which the possessor realizes or should realize as involving an unreasonable risk of such harm, if (a) the possessor has created the condition, . . ." Section 368 states, "A possessor of land who creates or maintains thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway, is subject to liability for bodily harm thereby caused to them." Comment a states, "a. Danger due to natural causes. In order that the rule stated in this Section shall apply, the condition must not only be one which

a reasonable man would recognize as involving an unreasonable risk to properly conducted traffic upon an adjacent highway, but also it must have been created by the possessor or his predecessor in possession or by someone acting on their behalf or by their permission after the highway has been dedicated. If the condition is so created, it is not necessary that it involves unreasonable risk when created. It is enough to subject the possessor to liability that he knows or should know that it has become unreasonably dangerous." Defendant should be held responsible for the artificial condition on the land resulting from the construction of the projecting ledge of the mansard roof in such manner as in the winter season to catch and accumulate snow and ice which, if not removed, may fall upon users of the sidewalk. It is no defense to say that the roof is constructed in the usual way; it is foreseeable that an artificial condition, though normally harmless, may in winter time become dangerous to sidewalk users. It therefore becomes the duty of the occupier to exercise reasonable care to avoid harm to them, and where, as here, the structure is "in the most active business portion of the city," the measure of care is correspondingly greater than it would be in some remote or less frequented place.

The application of the rule is illustrated in many of our cases. Very recently in *Reedy v. Pittsburgh,* 363 Pa. 365, 69 A. 2d 93 (1949), in which a number of cases on the subject were cited, we held liable one who collected the rain water from his roof into a single down-spout and discharged it over the sidewalk thereby creating a dangerous condition during winter weather. There is no difference between that case and this to justify the application of a different measure of liability in this case. The verdict in the present case implies that there was sufficient time between the heavy snowfall of some days before and the afternoon of plaintiff's injury, to put defendant on notice of the dangerous con-

dition along the ledge overhanging the sidewalk. The general subject is considered in *Ward v. Pittsburgh et al.*, 353 Pa. 156, 44 A. 2d 553 (1945); *Zieg et vir v. Pittsburgh*, 348 Pa. 155, 34 A. 2d 511 (1943); *Whitton v. H. A. Gable Co.*, 331 Pa. 429, 431, 200 A. 644 (1938); *Gross v. Pittsburgh*, 243 Pa. 525, 90 A. 365 (1914); *Green v. Hollidaysburg*, 236 Pa. 430, 84 A. 785 (1912); *Holbert v. Philadelphia*, 221 Pa. 266, 70 A. 746 (1908); *Brown v. White*, 202 Pa. 297, 51 A. 962 (1902); *Diehl v. Fidelity-Philadelphia Trust Co. et al.*, 159 Pa. Superior Ct. 513, 49 A. 2d 190 (1946). The majority quote from *Richey v. Armour*, 293 Pa. 127, 129, 141 A. 841 (1928). It is true that in that case we said, "Dripping eaves are a concomitant of bad weather universally. Gutters along the edges of eaves will clog up from ice and snow and overflow under certain weather conditions. This is inherent in the nature of eaves and gutters, just as it is in roofs without them, and their maintenance could not ordinarily be held negligent." But the next sentence was: "But if they should create a condition of danger which is obvious and exists for so long a time as to visit the owner of the premises with knowledge that some one may be hurt because of the condition, he might be visited with culpability; . . ."

The evidence, in the present case, as I have said, is sufficient to support the finding implied in the verdict that the condition resulting in plaintiff's harm existed long enough to put defendant on notice.

The majority opinion states, "It was incumbent on appellant to show some unusual condition existing before the accident that would lead appellee, through its employees, in the exercise of reasonable ordinary care, to believe that additional precautions were required." I cannot agree with that. I think the plaintiff was not bound to show "some unusual condition existing before the accident . . ." It was necessary only to show that in ordinary circumstances, in ordinary winter weather,

conditions on or about the building, whether resulting from rain, snow or ice, if not cared for created an unreasonable risk of injury to persons lawfully on the sidewalk. Such conditions and their probable consequences are readily foreseeable.

If we apply the rule that the evidence must be read in the sense most favorably supporting the verdict, the evidence leaves no doubt that the heavy snowfall took place five days before the injury; what should have been foreseen was that, in the intervening five days of alternately thawing and freezing weather, the accumulation of snow and ice on the ledge, plainly visible from the sidewalk, might slip down and do harm. See comments c. d and e to Section 302, Restatement, Torts,[3] charging knowledge of the normal forces of nature. The majority opinion refers to the rule of absolute liability. The verdict of the jury was not based on any theory of absolute liability, but on a simple allegation of negligence amply supported by the evidence.

Mr. Justice HORACE STERN and Mr. Justice JONES concur in this opinion.

---

[3] Section 302 provides: "A negligent act may be one which: . . . (b) creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, an animal or a force of nature."